Chief Justice Robertson
delivered the Opinion of the Court.
This is an action of debt against Philip Love and Bryant T. Young, executors of William Love, deceased, suggesting a devastavit.
Love failed to plead; and Young pleaded plene ad-ministravit, which being traversed by a general replication, a jury sworn to enquire of damages as to Love, and to try the issue formed on Young’s plea, found a general verdict for the debt in the declaration, and also for the interest due thereon, in damages: for which the Court rendered a judgment.
In the revision of the judgment, three questions are - . . presented: first — is the verdict good? second — did the Circuit Judge err in giving instructions to the jury? and, third — did he err in overruling an instruction proposed by Young?
did not authorize the judgment. Two questions are involved in the issue: first — whether Young had legally administered all the assets which had ever come to his First. The verdict is not responsive to the issue, and hands as an executor; and, secondly — if he had not so administered fully, what amount of the assets in his *448 hands had he wasted. Fairfax’s Executor vs. Ann Fairfax, 2 Cand. Rep. 178. Such a verdict, which, according to the common law, is necessary on such an issue in an action against an administrator or executor, merely as such, is peculiarly proper in this State, in an action of debt for a devastavit, in which plene administravit may be pleaded in virtue of a statute of 1810. The fact that there has been a waste of assets, does not subject the executor who wasted them to a judgment beyond the amount ascertained to have been misapplied; and therefore, as the judgment is in personam, it is more important to the executor that the amount of waste should be ascertained by the verdict, in an action for a devasta-vit, than in an ordinary suit against him as a fiduciary, in which the judgment, if against him, must be in rem, to be levied of assets in his hands.
Ex’rs are bound to take proper eareofall money and assets of the estate that come to their possession , or over which they exercise any control. An ex’or may be held accountable for money or assets which he has rec’d, tho’ ho intended to re ceive them, not as ex'or, but as agent for a co-ex’or ; and he will not be exonerated from liability, by having passed them over to a co-executor who' has wasted them.— Yet, one ex’or may act as agent for another, as by being clerk of a sale of the tes • tator’s goods; & may even take notes payable to himself and ano • ther as co-ex’rs, without incurring any liability as an ex’or — provided, he has never had an actual pos session or control of any of the assets.
*448 If the verdict in this case imports that there had been a waste of assets, it certainly does not imply that an amount equal to the judgment, or any other specific amount, had been wasted. And consequently, as Young was not, upon the issue tried, liable for more than the value of assets which he had wasted, the judgment rendered against him, is not sustained by a sufficient foundation.
Wherefore, the Circuit Judge erred in overruling a motion to arrest the judgment for a fatal defect in the verdict.
Second. An'attempt was made to convict Young of a devastavit, on the ground that, though, after he was qualified as an executor, he had been generally passive; yet he was at the sale of the testator’s effects; acted as clerk; permitted the notes of the purchasers to be made payable to his co-executor and himself jointly, and received from other purchasers some of those notes, and some small sums of money, which he forthwith handed over to Love, who appears to have been the more active, if not the only acting executor; and also, that he bought and received at the sale, a part of the property there sold, at the price of about one hundred and three dollars, and had received from his co-executor *449 about one hundred and twenty five dollars, in payment of an open account he had against the testator.
To resist the prima facie effect of most of these facts, Young attempted to prove that he had never acted as executor, and that, on the day of the sale, he, like others who were employed in similar offices, was the mere agent of Love, who controlled the sale, and acted alone as sole executor.
Upon these facts the Court gave to the jury the following instruction: — “That if the jury believe the sale of “property was made in the presence of both executors, “ the money which was paid, was paid to Young, and the “sale notes taken to both the executors, with the “knowlege of Young — he is answerable for the amount “ of the sales. But that, if they believe Young was “ passive, and did not act, he is not responsible for the “ assets wasted by Love. But if he acted in the busi- “ ness at all, he is liable to the extent of the assets “ which came into his hands; and that, even if he act- “ ed as the agent of Love, being executor, he is liable “ as executor for the amount of assets which came to his “ hands as such.”
This instruction is certainly very ambiguous, and might have deluded the jury. It would be difficult to tell what the Circuit Judge meant in the latter part of the instruction, in which he decided, first — that if Young had acted “ in the business at all,” he was liable “ for the assets which came to his hands;” and, secondly— that “ even if he acted as the agent of Love” he was liable as executor, for the assets which had come to his hands “as suck,” If the Judge intended to say only, that if Young had acted at the sale, as executor, he was liable for the assets sold at that sale, so far the instruction was undoubtedly correct. But such is not the true consistent ¡import of so much of the instrugtion as decided that Young was liable “ if he had acted in the business at all;” which certainly should be understood, (when applied to the facts which had been proved,) as meaning that, if he had acted even as Love’s agent at the sale, he was liable. And the next and last member of the instruction should be understood *450 as importing the same idea; for it would have been idle to instruct the jury, that Young, being de jure an executor, was liable for all the assets which came to his hands as such, even if he had only acted as an agent', unless the Court intended thereby that, as he was an executor, his acts as a mere agent of his co-executor, subjected him to responsibility as executor. We must, therefore, thus interpret this part of the instruction. And, so understood, it was not exactly a correct exposition of the law.
-UVoies’taken by an ex’or, upon a sale of property ■of the decedent, • are not assets ; & the mere fact that they were taken by one executor,who passed them over to another, does not make the former liable.
Nor will the fact that the notes were made payable to both of ’•two ex’rs, make ■one accountable who did not receive the proceeds — though it may strongly con duce to prove that he acted as ex’or in setting the assets for which the notes were taken; and, if he did so act, he will be ac. countable. Whether he did so act, or not, is a question for a j“7-
*450 If, as agent merely, Young had possession, even for an instant, .of any money or other assets, or exercised any dominion over any of the assets, he should, in our opinion, be held responsible for them as executor; because, being an executor, it was his duty to take care of all the assets which came to his possession, or over which he exercised any control; and he should not be exonerated by voluntarily delivering assets to his co-executor, and thereby enabling the latter to waste them. Williamson Executors, 1124.
But if he acted at the sale as a clerk only, he is not, as executor, liable for the property which was sold, excepting so far as he received the proceeds of the sale. lb.
The promissory notes given for property sold were not assets. The assets having been converted by the sale, those notes were the personal property of the executors, to whom they were made payable; and therefore, as they were kept and appropriated by Love alone, the mere fact that some of them passed through Young’s hands to those of Love, as his co-executor, should not, per se, subject Young to liability for the value of them. lb.
Nor is Young necessarily liable for the devastavit by his co-executor, in consequence of his not objecting to the execution of -the sale notes to the executors. This fact may tend strongly to show that he was acting as an executo’r. But it is susceptible of explanation by proof of other facts; and is not, therefore, conclusive. The notes may, in fact, have been thus written without his agency or privity, and merely for conformity to the *451 legal style of the administration; and if so, he is not therefore responsible; and the jury, and not the Court, had the right to decide on the facts upon this point.
Where an exec-otor makes pur-o/the testator's he is.lia-for the amount, debtPf his 0wn, of as high dignity as that of the creditor who claims it. if he Paysforthegoods ■ takes them in ofS own^f inferior dignity, he is answerable-
Whether one ex’r bl'e.fo'rT'devas-tavit^ committed not, depends’ up-011 facts '7lu?h must be submitted to a jury — as • “ecutoriai^au1, thority over the-hisetaidW^Stthdr acquisition, or disposal &c.
Two ex’rs — one other'asTuretyt. replied an ,execution against them, as ex’ors; and the former gave up a slave of the estate, to be sold under an execution upon the replevin bond, though there was an elder judgment outstanding: he had a right to pay the replevin bond; and if, in so doing, he had committed a devastavit, that would not make his co-executor, who had never had possession of the slave,, nor any agency in subjecting him to the junior judgment, liable.
The obvious deduction from the foregoing considerations respecting the instruction is that, though partly right, it was too ambiguous, comprehensive and peremptory; and must, therefore, be' deemed delusive and erroneous.
As to the money which come to his hands, he is, in' judgment of law, responsible, because it was assets; and therefore, it was his duty, as executor, to take care of it when he once had control over it.
For the same reason, he should be held responsible, as executor, for the goods sold and delivered to himself,'. unless he paid for them in a debt against the testator, of ... . “ . . equal dignity to that due to Wieklifle. If he paid money for them, then he parted with that which was assets, in his hands as executor, and if he never paid for them, or paid by setting off a simple contract debt, he was thereby guilty of a devastavit. And, for the like reasons, he may be chargeable for a devastavit, to the extent of the amount received or retained by him, in satisfaction of his open account against the testator.
As to other assets never actually in his hands, his liability for the waste of them by his co-executor, depends on the question whether, as a matter of fact, he r 1 .... . ever exercised any executorial' authority over them, or how far, by any voluntary act, he facilitated the acquisition, or aided in the conversion of them by bis co-executor. And these are matters of fact which the Circuit-Judge ought to have left to the judgment of the jury, by an intelligible and' hypothetical instruction.
Third. A slave (Bob) having been sold under an execution on a replevin bond executed by Philip Love as principal and by Young as his surety, in discharge of a r ° J ’ r , judgment against them, as executors, posterior m date to that of Wieklifle, the Circuit Judge instructed the 7 ° *452 jury, that Young was liable in this suit, for the value of the slave.
A testator had signed an obscure writing,in which he acknowledg’d the receipt of a certain sum,from a “ concern” in which he was agent, and one of his ex’ors a principal partner; but whether, or in what mode, the testator was accountable for that sum, did not appear : held, that the writing was notsuch evidence of a debt due from the testator to the ex’or, as would justify a retainer.
We cannot concur in this instruction. If Young never had Bob in his possession as an executor, and had no agency in subjecting him to sale under the execution, we can percieve no reason why he should be made liable for a devastavit, merely on the ground that, his co-executor directed or authorized the sale by the sheriff in satisfaction of a judgment against both of them. His co-executor had a right to pay the amount of the replevin bond. And even if that executor misapplied Bob as assets to that end, such a devastavit should not implicate Young, any more than any other conversion of the slave by the same executor to his own use, or to any other purpose, without his co-operation in the unlawful act. The question is who subjected the slave to the execution? by whose act was he converted? If Young was passive, and Bob was never in his hands as assets, he is not, as executor, liable for the conversion.
It does not appear that, as executor, he ever had possession of Bob; or that, in any way, he exercised any dominion over him, or aided his co-executor in getting possession of him."
Fourth. Young having read to the jury a written agreement between himself and the testator, purporting to be a settlement, acknowledging the receipt by the latter of a fraction over three thousand dollars, in money and land, “ from” a partnership “ concern,” in which he was an agent, and Young was the principal partner — the Circuit Judge refused to instruct the jury that the contract was evidence of an indebtedness which would have authorized a retainer by Young as executor.
And we concur with the Circuit Judge in this particular. A more incomprehensible writing could not be easily devised or imagined. But ambiguous as it is, we are inclined to construe it- as being an acknowledgment that W. Love had in his hands a certain sum which he had received as agent of the “ concern.” But whether he was entitled to the whole of it, or how *453 much money he had received and paid over to the partners, the writing furnishes no clue for determining.
This contract, therefore, were there no other objection to it, furnished no available evidence under the issue.
But, for the other errors which have been suggested, the judgment is reversed, the verdict aside, and the cause remanded for another trial.