In the ESTATE OF George Ruby
FERLING, Deceased.

Kenneth FERLING, Personal Representa-
tive of the Estate of George Ruby Fer-
ling, Deceased, Plaintiff-Respondent,

v.

Vivian ABERNATHY,
Defendant-Appellant.

No. 47069.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 10, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 17, 1984.

Application to Transfer Denied
June 19, 1984.

David L. Colson, Farmington, for defendant-appellant.

Geoffrey Lynn Pratte, Farmington, for plaintiff-respondent.

KAROHL, Judge.

On the petition of the personal representatives of the estate of George Ruby Ferling (estate) brought under § 473.340, RSMo 1978, the Probate Court determined that defendant-appellant Vivian Abernathy was in possession of $20,401.89 which was an asset of the estate and ordered that sum, plus interest, paid to the estate.

The Probate Court was asked by the petition to decide the legal effect of decedent's act on April 6, 1981 in adding respondent's name to his existing checking account as a joint tenant. She answered that decedent placed her name on his checking account and designated the proceeds as a gift to the survivor. The petition further alleged that in establishing the joint account the decedent acted under the domination, influence and coercion of re-

spondent. Without specific findings the Probate Court found "the facts and issues in favor of the estate of George R. Ferling, deceased, ... that Vivian Abernathy has no right, title or interest in said funds ..."

■ We will affirm unless there is no substantial evidence to support the decree, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *McIntosh v. Dowdy*, 625 S.W.2d 162, 163 (Mo.App.1981). Absent specific findings of fact we consider all controverted facts as found in accordance with the result reached, *Freeman v. Taylor*, 620 S.W.2d 1, 2 (Mo.App.1981). The judgment of the trial court will be affirmed if it is correct on any reasonable theory supported by the evidence. *Molasky Enterprises, Inc. v. Carps, Inc.*, 615 S.W.2d 83, 86 (Mo.App.1981).

■ In reviewing submissibility on the issue of undue influence we accept the evidence of the party claiming undue influence as true, disregard the evidence of the opponent unless it aids the proponents case, and give the proponent the benefit of every favorable inference that may be legitimately drawn from the whole evidence. *Wilhoit v. Fite*, 341 S.W.2d 806, 813 (Mo. 1960).

Applying these standards to the evidence, the estate's evidence was that on April 6, 1981 the decedent drove his friend Vivian Abernathy and her daughter to the Mercantile Bank of Farmington, Missouri. The bank employee in charge of new accounts, called by the estate, gave the following testimony:

Q. Did you explain to Mr. Ferling what the meaning of putting someone else's name on his account was?

A. Yes.

Q. What did you tell him?

A. That gives the co-owner full authority to sign, withdraw or deposit anything they please with this checking account.

Q. You explained to him that it gave them an opportunity to withdraw any and all funds that were in the bank?

A. Yes.

Q. Did you explain to him that the account was then in the name of the individual's or the survivor? If one should die, did you explain that to him?

A. Yes. Yes.

Q. That if one should die, what happens to the account?

A. It automatically goes to the other one that's on the account.

Q. You explained that to Mr. Ferling?

A. Yes.

Q. Did he appear to you, as you were discussing it with him, to understand what you were saying?

A. As far as I realized he did.

.    .    .    .    .

Q. Well, how did Mr. Ferling appear to you that day when—on that day when you were talking to him as to his ability to understand what you were telling him?

A. He seemed to understand.

.    .    .    .    .

Q. Okay. Now, when you say Mr. Ferling appeared to understand what you were saying, what indications did he give?

A. I don't recall in my mind him questioning or anything like that. I mean, we explain the process to each individual case that comes in. We explain what's being done and I don't remember anything in particular of him not understanding what I was saying to him.

.    .    .    .    .

Q. Okay. Now, did he manifest that agreement?

A. I asked him if he was—if, you know, if that was—as I was explaining what was being done, you know, we always have to ask the main person if that is exactly what they want and he did apply that it was.

Q. He what?

A. He did apply that that was what he wanted, was to add her to his account.

Q. What do you mean by "apply"?

A. He said yes.

The estate also called Dr. Richard C. Winder, D.O. Dr. Winder treated the deceased between August, 1980 and December, 1980 for a chronic lung problem, particularly combined bronchitis and emphysema with an overlay of bronchogenic carcinoma. Dr. Winder's treatment was primarily rendered at Mineral Area Osteopathic Hospital. On December 17, 1980, Mr. Ferling was transferred to St. John's Mercy Hospital in St. Louis because of a strong suspicion of spread of cancer to the brain manifested by a disorientation as to time and place. Dr. Winder was of the opinion that on December 16, 1980 George Ruby Ferling was mentally incompetent. He testified, however, that he could not give an opinion as to Mr. Ferling's mental competency on April 6, 1981. He further testified that there was a strong possibility that Mr. Ferling could definitely be influenced. On cross-examination Dr. Winder indicated that the brain scan and C.T. scan testing at St. John's Mercy Hospital was negative and that there was no way he could tell what Mr. Ferling's condition was on April 6, 1981; that in January 1981 he became oriented as to time and place which indicated to the doctor that his condition may have been improving. In response to this testimony the estate's attorney acknowledged to the court that Dr. Winder could not give an opinion to a reasonable degree of medical certainty as to Mr. Ferling's mental condition on April 6, 1981.

■ Appellant elected to defend against the claim of the estate on the basis of the creation of a joint bank account and on the contention of gift. On this defense appellant, as a donee, must show that the donor had the capacity to know and understand the nature and effect or consequences of the act involved, a reasonable understanding of the nature and extent of the donor's property, and an understanding of the natural object of donor's bounty. *Flynn v. Union National Bank of Springfield,* 378 S.W.2d 1, 6 (Mo.App.1964). "[T]he capacity required to make a gift is not as high or acute as the capacity to engage in a business or arm's length transaction where each party thereto is engaged

in getting advantage to himself, instead of the simple satisfaction in having benefited one who is near and dear." *Id.* at 6.

The decedent was divorced in 1959 or '60, and defendant was a widow. The decedent had expressed a desire to marry Mrs. Abernathy. During his illness he stayed at her home and she attended to his health care requirements. After the joint account was established the account statements were regularly reviewed by the decedent. This evidence establishes both a reason for the gift and an understanding of the extent of the asset here contested. Further, the estate's evidence was that his act of establishing the joint tenancy checking account was done only after the effect was explained to the decedent and after he, as the "main person" was informed of the legal effect. The estate's own evidence therefore satisfied the appellant donee's burden of proof of an understanding and knowledgeable gift.

There remains, however, plaintiff's additional contention of undue influence or coercion. "In order to set aside a transfer upon the ground of mental capacity, it must be shown that the incapacity existed *at the time of the act which is in question.*" *Id.* at 8. (emphasis in original). The estate's evidence of incapacity was probative only to December, 1980. Dr. Winder testified as to the possibility of influence on April 6, 1981, not the probability. He expressly testified that he could not render an opinion as to mental capacity or competency on April 6, 1981. On that day the decedent drove to the bank, dealt with the bank employee, and appeared to understand the explanation of the legal effect of his acts. This was the estate's evidence.

There was no evidence that appellant handled any business affairs or was otherwise a fiduciary of the decedent. The burden of proving undue influence is upon the party asserting it unless the donee stands in the relationship of trust and confidence. *Id.* at 10. "Usually the trust [sufficient to establish such relationship] arises in a reliance upon another in regard to the handling of property and business affairs." *Id.* at 11.

The estate did plead a fiduciary relationship but it failed to prove that appellant stood in that relationship and therefore there was no presumption that the gift was void and no shifting of the burden of proof. Even if the evidence had proven a fiduciary relationship the estate's own evidence, given by the bank employee, would satisfy the defendant's burden to rebut the presumption.

If the court's judgment is correct on any reasonable theory we must affirm. *Molasky Enterprises, Inc. v. Carps, Inc.*, 615 S.W.2d 83, 86 (Mo.App.1981). We look also to the legal effect of the statutory joint tenancy. Absent fraud, misrepresentation or undue influence the appellant, as surviving statutory joint tenant and not as donee; would be entitled to retain the account. The estate's evidence was that the decedent knowingly signed a joint tenancy account card so that he and appellant became joint tenants on the checking account. Section 362.470.1, RSMo 1978 provides in relevant part:

> When a deposit is made by any person in the name of the depositor and any one or more other persons, .. as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them .. the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of such persons during his lifetime, or to any one of the survivors of them after the death of any one or more of them. The making of a deposit in such form, and the making of additions thereto, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the bank or trust company or any survivor is a party of the intention of all the parties to the account to vest title to the account and

 

the additions thereto and all interest thereon in the survivor.

 Appellant as a surviving joint tenant was entitled to the conclusive effect of the statute. The estate was expressly required by the statute to prove fraud or undue influence. It did not allege or attempt to prove fraud and it failed to prove undue influence.

We find that the decree is not supported by substantial evidence. *McIntosh v. Dowdy,* 625 S.W.2d 162, 163 (Mo.App.1981). We reverse.

DOWD, C.J., and CRANDALL, J., concur.