743 S.W.2d 498 (1987)
In re the ESTATE OF Joseph J. GANGLOFF, Deceased.
Charles J. McMULLIN, Plaintiff-Respondent,
v.
Robert R. BORGERS, Defendant-Appellant.
Nos. 52368, 52431.
Missouri Court of Appeals, Eastern District, Division Two.
November 24, 1987.
Motion for Rehearing and/or Transfer Denied January 7, 1988.
Application to Transfer Denied February 17, 1988.
*499 Dennis B. Mertz, St. Louis, for defendant-appellant.
Charles J. McMullin, St. Louis, for plaintiff-respondent.
PUDLOWSKI, Judge.
Robert Borgers, the personal representative of the Estate of Joseph J. Gangloff, appeals from a judgment in a court-tried case in the Probate Division of the Circuit Court of the City of St. Louis which ordered his removal as personal representative and required him to pay back to the estate the sum of $41,950.58 as a result of the breach of his fiduciary duties and his negligent mismanagement of the estate. *500 His appeal has been consolidated with the cross appeal of the petitioner. We affirm in part as modified, reverse in part and remand.
Decedent, Joseph J. Gangloff, retained an attorney named Edwin P. Harrison to prepare his will on October 12, 1981, upon the recommendation of another attorney who had been consulted for the same purpose. An earlier will dated July 2, 1981, named Charles McMullin, the petitioner in this action, as a legatee and as the estate's attorney, but this will was rejected by the probate court.
On July 26, 1982, Joseph Gangloff died. His will divided his estate among seven legatees in varying percentages. Among those legatees were Dorothy Cornielson and Borgers. In addition, on Gangloff's death, ownership of a checking account with a balance of $13,141.21 passed to Borgers as a joint tenant with Joseph Gangloff with the right of survivorship. Although this account was outside of the probate estate, Borgers included it on the Estate Tax Returns and paid taxes on it out of estate assets in the amount of $5,146.00.
The day after Gangloff died, Borgers retained Harrison to represent the estate. The Last Will and Testament of Joseph J. Gangloff was filed with the Probate Division of the Circuit Court of the City of St. Louis and Letters Testamentary were granted under independent supervision, without bond, to Robert Borgers on July 30, 1982.
Three months later, McMullin filed a claim for $30,500.00 for legal services rendered to the decedent prior to his death. The final judgment reduced the claim to $16,300.00, and it was affirmed on appeal. See McMullin v. Estate of Gangloff, 686 S.W.2d 37, 38 (Mo.App.1985) (per curiam).
On both December 10 and 31, 1982, Borgers disbursed estate assets of $10,000.00 each to himself, as partial payment of personal representative's fees, and to Harrison, as partial payment of attorney's fees. Borgers testified that he disbursed the assets on the advice of Harrison that it was for "tax purposes." On March 7, 1983, Borgers and Harrison each received an additional $5,000.00 distribution. Harrison disappeared in May 1983, and his whereabouts are unknown to this date. In response to a petition by Borgers, the probate court determined on July 18, 1984, that the reasonable compensation for the legal services of Harrison was $2,500.00. Although Borgers attempted to recover the $22,500.00 overpayment from the Missouri Bar Client Security Fund, his claim was denied.
Borgers requested and was granted an extension of six months to file the Federal and Missouri Estate Tax Returns that had been due on April 26, 1983. Both returns were filed at the end of the extension period, but penalties and interest charges of $7,335.39 (Federal) and $838.05 (Missouri) were assessed because payment had not been made as of the original due date.
The second annual settlement in the estate was filed on August 8, 1984. Two days later, the Probate Division ordered the partial distribution of $200,000.00 to the legatees on a pro rata basis, including $30,000.00 to Borgers. On the same day, Dorothy Cornielson filed a document titled: Petition for Declaratory Judgment on Removal of Personal Representative, the Bonding of Same until Removal, Appointment of Successor, For Forfeiture of Fees and Surcharge with Accounting. Borgers testified that he prepared checks in partial distribution on August 22, 1984, the day before the probate court ordered him to deposit $20,000.00 in a secured and restricted account and to exclude his share of any future partial distribution. Although the August 23, 1984, order of the court made no reference to the August 10 order for distribution, the trial court found that Borgers violated the court order of August 23, 1984, when on August 27, 1984, he cashed the check for $30,000.00 payable to himself as legatee. The court found, moreover, that Borgers had actual notice of both the court order of August 23, 1984, and of a motion to set aside the distribution pending at the time of the order.
Borgers filed a final settlement on February 21, 1986. Legatee Dorothy Cornielson thereafter assigned her remaining *501 rights in the estate to petitioner who objected to the final settlement as an interested person.
In the interest of brevity and clarity, we have had to consolidate and reorganize some of the issues presented in this appeal and cross appeal. Furthermore, some preliminary comments are necessary.
The standard of care required of a personal representative is that he act "reasonably for the benefit of the interested persons." Section 473.810, RSMo 1986. This standard imposes upon the personal representative the duty to exercise the same degree of skill and care as an ordinarily prudent man would exercise in dealing with his own property. The prudent course of action under any given circumstances is a determination for the trier of fact. Southwestern Bell Telephone Co. v. Batten, 688 S.W.2d 61, 63 (Mo.App.1985). This court will not interfere with that determination unless it violates the well-established standard of Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). "On appeal of a court-tried case, the appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses ..., but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." In re Adoption of W.B.L., 681 S.W.2d 452, 455 (Mo. banc 1984).
The trial court found it was a breach of Borgers' fiduciary duty to make significant distributions of attorney's fees and fees for his services as personal representative prematurely, that is, prior to the expiration of the six-month claim period and before any assets had been administered. We find no error in that determination. The trial court did not apply a theory of strict liability as Borgers alleges, but rather found that reliance on the attorney's representations that the premature fee disbursements should be made for tax purposes was an insufficient justification for those disbursements. Although a personal representative may rely on the advice of an attorney, it must be reasonable to do so under the circumstances to avoid potential liability to an estate. In this case, the unreasonable premature disbursement resulted in a $3,100.00 loss of interest to the estate and a $22,500.00 loss for the overpayment to Harrison which must be charged to Borgers.
Borgers argues that the premature payment of fees to the attorney was not the proximate cause of the loss to the estate. He asserts that the unforeseen disappearance of the estate's attorney was an intervening cause of the loss; therefore, he should not be held liable.
"Where the likelihood of the intervening act was one of the hazards that made defendant's conduct negligent, the fact that the act occurred does not prevent the defendant from being liable for the consequences." St. John Bank & Trust Co. v. City of St. John, 679 S.W.2d 399, 403 (Mo. App.1984). An intervening cause can only be the sole proximate cause if it so breaks the chain of events initiated by the defendant's negligence that the two events "become independent and the result cannot be envisioned to be the natural and probable consequence of the primary cause or one which ought to have been anticipated." Chambers v. Bunker, 598 S.W.2d 204, 207 (Mo.App.1980). The attorney's disappearance would not have caused a loss to the estate without the premature payment by Borgers, which we have already found to be a breach of fiduciary duty. The two events are not independent and a prudent trustee ought to have anticipated the possibility that in prepaying significant fees to an agent, there was a risk that for some reason the agent would be unable to perform completely and a loss might result to the estate.
Borgers contends that Section 473.820.2, RSMo 1986, is dispositive. It provides: "A personal representative is individually liable for obligations arising from ownership or control of the estate or for torts committed in the course of administration of the estate only if he is personally at fault." Although the statute appears to be relevant, further research into the Uniform Probate Code from which it is derived indicates that Part Three of the Code in *502 general, and Section 3-715 in particular, is meant to apply to the liability of the personal representative to the estate's creditors and not to the beneficiaries of the estate. See Unif.Probate Code Section 3-715, 8 U.L.A. 373 (1982). The reasonableness standard of Section 473.810, RSMo 1986, as previously explained, is the standard applicable to the duties of the personal representative with respect to the estate's legatees. The trial court correctly found that the hiring of an attorney for the estate is the duty of the personal representative and not that of the decedent. Section 473.787.3, RSMo 1986. The trial court stated: "Mr. Borgers is charged with the hiring of Mr. Harrison." There is no evidence that Borgers acted negligently in hiring Harrison to represent the estate. If it was the trial court's intention that he be charged with negligence in the selection of Harrison, then the trial court erred. If a trustee uses reasonable care in the selection, instruction and supervision of an agent, "it is generally held that the trustee is not liable to the beneficiary for the negligence or inefficiency or criminal conduct of the agent or employee." G. Bogert, The Law of Trusts & Trustees, Section 557 (2nd ed. rev. 1980). See Donaldson v. Allen, 81 S.W. 1151 (Mo.1904).
Section 473.810(14), RSMo 1986, gives personal representatives the power to "[e]mploy persons, including attorneys, auditors, investment advisors, or agents, to advise or assist the independent personal representative in the performance of his administrative duties; act without independent investigation upon their recommendations; and instead of acting personally, employ one or more agents to perform any act of administration, whether or not discretionary." This subsection represents a change from earlier law which would have held it was a breach of trust to either delegate discretionary authority or to act upon an agent's recommendation without independent investigation. 4 F. Hanna, Missouri Practice (Probate Code Manual) Section 473.810(14), at 329 (1986). Under the new probate code, unless such delegation or reliance is unreasonable, the personal representative should not be held liable for the errors, omissions or malfeasance of the estate's agents.
The cases cited by the petitioner for the proposition that a client is chargeable with the negligence and wrongful acts of his attorney are not applicable to cases arising under Section 473.810(14), RSMo 1986. See Gibson v. Smith, 422 S.W.2d 321 (Mo. 1968); Baughn v. Rapidways Truck Leasing Co., 698 S.W.2d 618 (Mo.App.1985). The possible error in finding Borgers negligent in hiring Harrison, however, was harmless because the court found that Borgers acted unreasonably in the premature payment of fees to the attorney. "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b).
The trial court determined that Borgers wrongfully included joint account funds that were not part of the probate estate in the computation of the estate's assets for the purposes of estate taxation. This error resulted in overpayment of federal estate taxes in the amount of $4,495.00 and Missouri estate taxes in the amount of $631.00.
Case law clearly holds that legatees who are also joint owners with the decedent of non-probate property are liable for tax contributions to the extent that such jointly owned property generated the tax. Carpenter v. Carpenter, 364 Mo. 782, 267 S.W.2d 632 (1954); In re Estate of Whalin, 505 S.W.2d 99 (Mo.App.1973). Borgers amended his Final Settlement and his Petition for Distribution to charge the $5,126.00 against his portion of the final distribution on August 11, 1986. Because he admits liability for this amount, our concern is with whether this error was a breach of fiduciary duty of the magnitude that requires removal of the personal representative. In the recent case of In re Estate of Mapes, 681 S.W.2d 476 (Mo.App. 1984), this method of paying the taxes was held to be improper. It created an antagonistic and substantial conflict of interest between the personal representative and *503 the estate. Therefore, the trial court did not err in removing the personal representative.
Protesting throughout the trial and his brief that he merely acted on the advice of the attorney, Borgers argues that it was error to charge him with the penalties and interest assessed because of the delayed filing of the estate tax return. We agree. Borgers testified that Harrison asked for and was granted an extension of time to file the returns because of a large, contested claim against the estate pending in the probate court. The attorney's error in not recommending that he pay the estimated amount of the tax liability when originally due rather than waiting until the return was filed at the end of the extension period cost the estate $8,173.43 in interest and penalties to the state and federal governments. Although the personal representative is responsible for timely filing and paying estate taxes under Section 473.810(11), RSMo 1986, in so doing he is allowed to rely on the advice of an expert. Section 473.810(14), RSMo 1986.
As we have stated, a personal representative is not strictly liable for the errors, omissions or malfeasance of the estate's agents unless he unreasonably relies on their advice. There is no evidence in the record that would indicate that Borgers had any knowledge of estate tax preparation. The preparation and filing of complex estate tax returns almost always requires the services of a professional. See Wohl v. Lewy, 505 So.2d 525, 526 (Fla.Dist. Ct.App.1987). The court in Wohl, interpreting the same statutory language as Section 473.810, RSMo 1986, reached the same conclusion as we reach today. It found the personal representative was not liable when he accepted the erroneous advice of an accountant in the filing of an estate tax return because he acted reasonably in employing and taking the advice of the accountant.
Borgers directs our attention to United States v. Boyle, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), which interprets "reasonable cause" in Section 6651(a)(1) of the Internal Revenue Code. The case differentiates between ministerial acts and reliance on the advice of an attorney concerning a question of law. The court determined that it was not reasonable cause for late filing of an estate tax return that the executor relied on the estate's attorney to advise him of the proper time for filing. Nevertheless, the Court goes on to explain that even though it was not reasonable cause under the statute in question, it does not resolve the question as to whether it is reasonable with respect to the relationship between the executor and the attorney. Id. at 250, 105 S.Ct. at 692. Unlike Boyle, this case does not involve whether the money is owed; the question is who is responsible for the penalty imposed as a result of the delay in filing the return, the estate or Borgers.
The other cases cited by the parties are distinguishable. In all of them, the administrator was also an attorney. See In re Alexander's Estate, 360 S.W.2d 92 (Mo. 1962); In re Estate of Zierath, 669 S.W.2d 70 (Mo.App.1984); In re Estate of Mapes, 681 S.W.2d 476 (Mo.App.1984); In re Estate of Gould, 547 S.W.2d 863 (Mo.App. 1977). Moreover, none of the above cited cases involve independent administration under the new probate code.
Borgers also urges that his failure to make simultaneous partial distributions to all residuary legatees in May 1983 was not a breach of his fiduciary duty although this action resulted in a potential gain of interest for those, including Borgers, who received the earlier distributions. Two legatees, Dorothy Cornielson and Claudette Gangloff, had consented to McMullin's claim for attorney's fees accrued during decedent's lifetime. Borgers testified that his attorney had advised him that he should file a Petition for Construction of the Will to determine if their consent violated the will's in terrorem clause.[1] He further testified *504 that he held the checks of the legatees involved in the will construction action on the advice of his attorney pending a decision by the court. However, this can not explain the significant delays in disbursements to all the other legatees evidenced by the settlement statement.[2] Therefore, the trial court did not err in finding that Borgers breached his fiduciary duty to the legatees when he failed to act impartially in the timing of distributions.
Borgers, the personal representative, also challenges the trial court's finding that he was guilty of misconduct in violating the August 23, 1984, order of the court.[3] The record indicates that on August 10, 1984, the court ordered him to distribute $200,000.00 among the legatees. Four days later Legatee Cornielson objected to the distribution. This objection was pending when the court issued the August 23 order. Borgers testified that he issued the distribution checks pursuant to the August 10 order on August 22 although his own Final Settlement indicates the date was August 27. All of the checks cleared the bank by August 29. His own disbursement check was cashed by the bank on August 27, 1984.
Borgers contends that he did not violate the August 23 order which excluded any future distribution because he was acting pursuant to the August 10 order to distribute the funds. The trial court explained that Borgers acted with actual notice of both the court order of August 23 and the objections to and motion to set aside the distribution that were pending at the time he distributed the funds. The fact that he acted despite such knowledge violated the duty to act "reasonably for the benefit of the interested persons." Section 473.810, RSMo 1986. Because the prudent course of action is a factual determination, we defer to the trial court's finding. In re Adoption W.B.L., 681 S.W.2d 452, 455 (Mo. banc 1984). Southwestern Bell Telephone Co. v. Batten, 688 S.W.2d 61, 63 (Mo.App. 1985).
Borgers protests the award of $4,000.00 in attorney's fees from the estate to the petitioner. Additionally, in the cross appeal the petitioner challenges the award as being insufficient. It would be inequitable for the legatees to benefit from petitioner's efforts to increase the fund due them without contributing to his expenses. McMullin v. Klein, 468 S.W.2d 657, 660 (Mo.App.1971). Whether the attorney's fees are required by statute or equity, his services benefit the entire estate and there is no reason to deny them because the petitioner is also an attorney. Colbert v. Howard, 707 S.W.2d 496, 497 (Mo.App. 1986). There exists substantial evidence on the record of the hours and effort that the petitioner expended in this action.[4] Nevertheless, we find no inequity in the decision of the trial court whose decision we will affirm unless it violates the standard of Rule 73.01(d).
*505 In addition to petitioner's cross appeal for an increase in the fee awarded to him by the trial court, he has filed with this court a petition for an award of attorney's fees for the appellate pursuit of this case. None of the cases cited in support of his request, however, provide authority for this court to make such an award. Petitioner directs our attention to Tull v. Housing Authority of Columbia, 691 S.W.2d 940 (Mo.App.1985). In Tull, the appellate court awarded attorney's fees because the lease in controversy provided for such an award. Petitioner also cites Heshion Motors, Inc. v. Western Int'l Hotels, 600 S.W.2d 526 (Mo.App.1980), but the basis for the award in that case was a provision in the insurance contract. There is no contract involved in this case on which to base such an award.
Finally, petitioner relies on In re Estate of Murray, 682 S.W.2d 857 (Mo.App.1984), and In re Estate of Holscher, 724 S.W.2d 577 (Mo.App.1986). In both cases the appellate court approved the trial court's award of attorney's fees as we have done in this case. We are reluctant to initiate the expansion of attorney's fee awards to motions on appeal; therefore, this request is denied.
Borgers contends that the petitioner is not an "interested person" under Sections 472.010(15) and 473.590, RSMo 1986. The trial court correctly found petitioner to be the assignee of Legatee Cornielson and, therefore, an interested person. The insufficiency or lack of consideration paid to Legatee Cornielson and the fact that the assignment was made for the purpose of providing a more convenient enforcement of the action do not affect the validity of the written assignment in this case. See Neidert v. Neidert, 637 S.W.2d 296 (Mo. App.1982).
The petitioner raises several issues in his cross appeal as to the inadequacy of the judgment. Petitioner asserts that the trial court should have denied all fees to Borgers rather than decreasing the amount of fees to which he was entitled because of the extent of Borgers' breach of fiduciary duty.
Section 473.153.4, RSMo 1986, provides in pertinent part: "If the court finds that a personal representative has failed to discharge his duties as such in any respect it may deny him any compensation whatsoever or may reduce the compensation which would otherwise be allowed." This court has previously indicated that the statute gives the trial court substantial discretion in the determination of whether to reduce or deny a fee to a personal representative on the basis of his misconduct. Estate of Humber v. Brandhorst, 675 S.W.2d 436, 439 (Mo.App.1984). We find no abuse of that discretion on the record in this case in light of the substantial surcharge the court assessed against the personal representative.
We do, however, note in our review of the record that the trial court has made a mathematical error in computing the amount that the personal representative is indebted to the estate. Although the error went unnoticed by the parties to this appeal, this court is empowered to give such judgment as the trial court ought to have given. Rule 84.14. The trial court found that Borgers' statutory fee in this estate was $33,051.14, that he had paid himself $33,157.73; and that, based on the present status of the estate, Borgers was entitled to a fee of $30,000.00. In computing the surcharge, the trial court subtracted $30,000.00 from the statutory fee rather than the amount Borgers had received; therefore, the surcharge should be increased by $106.59.
In summary, we affirm the decision of the trial court to remove Borgers as personal representative and the award of $4,000.00 to petitioner for attorney's fees. Because of his mismanagement and other breaches of fiduciary duty, we affirm the finding that Borgers is indebted to the estate in the amount of the $22,500.00 overpayment of attorney's fees, the interest *506 loss of $3,100.00, the overpayment of estate taxes due to including non-probate assets in the estate in the amount of $5,126.00, and the modified refund of fees paid to himself of $3,157.73. We reverse the finding that Borgers is liable to the estate for the $8,173.44 in interest due to late payment of estate taxes.
The judgment is affirmed in part, modified in part, reversed in part and remanded to the trial court to issue a new judgment in accordance with this opinion. Costs to be taxed against the personal representative.
STEPHAN, P.J., and SIMON, J., concur.
NOTES
[1] The clause reads:

If any of my beneficiaries shall directly or indirectly resist the probate of this Will or contest its validity or maintain before any judicial body that this is not my Last Will, then such beneficiary or beneficiaries so disputing or contesting my Will shall forfeit all interest in my estate hereunder and the legacy herein given to him or her shall be deemed lapsed and the same shall be divided among the other personal [sic] entitled to take the residuary estate increasing their respective fractional shares proportionately.
[2] The settlement filed on September 2, 1983 indicates that the following disbursements were made on the dates indicated.

Date Legatee Amount
3-18-83 R. Borgers $ 30,000.00
4-26-83 M. Eckert 6,000.00
5-2-83 Charles Gangloff 60,000.00
5-6-83 I. Gangloff 22,000.00
5-6-83 R. Borgers 75,000.00
5-25-83 M. Eckert 15,000.00
6-30-83 Charles Gangloff 150,000.00
6-30-83 I. Gangloff 55,000.00
6-30-83 D. Cornelison 70,000.00
6-30-83 I. Claudette Gangloff 203,000.00

[3] The order reads:

On the court's own motion, the personal representative is hereby directed to deposit the sum of Twenty Thousand Dollars ($20,000.00) in a secured account and restricted to the further order of this court.
Further, the personal representative is hereby directed to exclude his distributive share of any future partial distribution. His distributive share shall remain in the estate to his credit.
[4] The attorney for Borgers offered petitioner's record into evidence himself, therefore, his assertion that they were not in evidence is, at best, an oversight.