In the ESTATE OF Faye V. SMITH.

Darrell E. HAER, Garth L. Haer, Glen O. Haer, Respondents/Cross–Appellants,

v.

Melvin L. HAER, Personal Representative of the Estate of Faye V. Smith, Deceased, Appellant/Cross–Respondent.

No. 70858.

Supreme Court of Missouri, En Banc.

March 14, 1989.

Creath S. Thorne, James H. Counts, St. Joseph, for appellant/cross-respondent.

W. Woody Schlosser, H. Fred Northcraft, Daniel N. Allmayer, Kansas City, for respondents/cross-appellants.

HIGGINS, Judge.

These consolidated appeals are from a judgment entered February 9, 1987, by the Probate Division of the Circuit Court of Holt County. Plaintiffs Darrell E. Haer, Garth L. Haer and Glen O. Haer sought a discovery of assets, an accounting, the removal of Melvin Haer as personal representative, and a declaratory judgment that Melvin Haer owed the estate $72,000 plus interest under an oral contract between Melvin and the deceased for the sale of certain farm land. After a non-jury trial, the court found and declared:

(1) that certificates of deposit jointly titled between Melvin L. Haer and Faye V. Smith vested in Melvin at the time of Mrs. Smith's death, with the exception of accumulated interest ordered to be inventoried and placed in the estate; that plaintiffs' request that a constructive trust be imposed on the certificates of deposit was not timely pleaded;

(2) that Mrs. Smith sold 240 acres of land to Melvin Haer for $120,000 to be paid at the rate of $6,000 for 20 years; that no documentation supported Melvin's claim that the balance of the debt was to be forgiven upon Mrs. Smith's death; that the balance due of $72,000 was to be inventoried and included in the estate with interest accruing at the statutory rate of 9 percent per annum from June 12, 1983;

(3) that Melvin Haer as personal representative was legally obligated to file timely federal and state estate tax returns; that his failure to do so resulted in the imposition of penalties and interest of $3,461; that said penalties and interest were to be surcharged against any amount to be distributed to Melvin Haer from Mrs. Smith's estate;

(4) that the personal representative was to make application to the court to take charge of the real and personal property in the estate within 45 days of the court's order and was to file a full and complete settlement with the court within 45 days of the court's order;

(5) that the personal representative's technical failings had not shown that he could not properly manage the estate; that the estate can continue to be administered by Melvin Haer;

(6) that each party was to pay respective attorneys' fees;

(7) that costs were to be taxed to the defendant, Melvin Haer, individually, and not as personal representative.

These appeals from the ensuing judgment were transferred by this Court after opinion in the Court of Appeals under Rule 83.03.

The judgment of the trial court is affirmed in part, modified in part, reversed in part with directions; and remanded.

With exception of the sections regarding the contract for the sale of land and costs, this Court borrows freely from the opinion of the Court of Appeals, Western District, Honorable Fernando J. Gaitan, Judge.

## THE FACTS

Plaintiffs Darrell E. Haer, Garth L. Haer and Glen O. Haer are the brothers of the defendant, Melvin L. Haer. Their parents were farmers, living first near Craig, Missouri, and after 1957, in Craig. Of the four sons, only Melvin remained in the Craig area.

After he returned from military service in 1953, Melvin took over the operation of a 160 acre farm owned by his parents in a sharecropping arrangement. In 1957 when his father ceased to be active in farming, Melvin also took over the operation of the "Home Place," a 240 acre farm owned by his parents, on a sharecropping basis. Melvin's name was placed on his parents' joint checking account; he made deposits and wrote checks for them when they were out of town.

After his father's death in 1964, Melvin continued to farm the 160 and 240 acre tracts and paid his mother 40 percent of the farming income. Additionally, he managed his mother's cow and calf operation, performed trucking services, and stored grain owned by his mother without compensation. His relationship with his mother was close and trusting.

In addition to placing Melvin's name on her checking and savings accounts in Craig, Missouri, Mrs. Smith also registered Melvin as a joint tenant on certain certificates of deposit funded by her. At the time of Mrs. Smith's death, these certificates of deposit had a principal value of $105,000.

Darrell Haer and Glen Haer testified that based on conversations they had with their mother it was their understanding that she wanted the certificates of deposit to be divided equally among her sons at her death. Earlene Haer, Darrell's wife, testified that Mrs. Smith told her she was using the interest on her savings for herself but wanted the principal to go to "her boys." Melvin Haer, however, testified that his mother never discussed her reasons for registering the certificates jointly with him, and that his mother never told him how she wished the money to be distributed after her death. Neither the principal nor the

accrued interest was included in Mrs. Smith's estate. Both principal and interest were paid over to Melvin after his mother's death.

In October of 1974, the mother married Charles Martin Smith. Shortly after the marriage, Melvin Haer suggested that his mother make a postnuptial agreement with Mr. Smith for the purpose of retaining control over the property that she and his father had accumulated. A meeting was held at the offices of R.A. Brown, Sr., a St. Joseph attorney. Present at the meeting with Mr. Brown were Faye V. (Haer) Smith, Charles Smith, Melvin Haer and his wife, Betty Jo Haer. Although the main purpose of the meeting was to prepare a postnuptial agreement, Mrs. Smith also prepared a will. In accordance with the post-nuptial agreement, no provision was to be made in the will for Mr. Smith; her estate was to be divided equally among her sons.[1]

After the will was discussed, Mrs. Smith asked Melvin if he wanted to buy the 240 acre "Home Place." Mrs. Smith told Melvin that "she wanted $6,000 a year for 20 years or her lifetime or $120,000." Melvin testified that he agreed to pay $120,000 for the farm at the rate of $6,000 a year, with the understanding that the obligation would terminate in the event of his mother's death.

No contract, promissory note, letter of intent, or deed of trust evidenced the terms of the agreement. Although Darrell, Garth and Glen testified that their mother had told them generally about the sale of the 240 acre farm to Melvin, they were not told of the specific terms of the oral contract. The plaintiffs, however, introduced a loan application in the names of Melvin and Betty Jo Haer dated September 26, 1980. The application refers to a real estate mortgage held by "Mother ($6,000 annually, 20 years)" with current liability of "$120,000" on a certain tract described as "Home," "240" [acres], worth "$480,000."

Mrs. Smith executed a warranty deed dated October 8, 1974, granting the 240 acre farm to Melvin and Betty Jo Haer. The deed was recorded on December 6, 1974. Mrs. Smith delivered the deed to Melvin sometime after the meeting at Mr. Brown's law offices. As agreed, Melvin paid his mother $6,000 a year for the years 1975–1982.

No payment was made for 1983, the year of his mother's death. Melvin explained that although he usually paid his mother by April of each year, his mother spent the early part of 1983 in Brownsville, Texas. She returned from Brownsville but entered a hospital in Kansas City for an operation. In May or June, while in the hospital, she told Melvin not to pay her until she returned home to Craig. Mrs. Smith died on June 12, 1983. Melvin was named personal representative in her will. He admitted, notwithstanding her instruction to wait, that he understood she was not waiving the 1983 payment. He failed, however, to include the $6,000 thus due and owing in his mother's estate.

Melvin engaged the services of a certified public accountant, Helen Taylor, to prepare the various tax returns for the estate. He relied completely on her advice in filing the required returns.

The evidence indicates that Ms. Taylor was unethical and negligent in preparing the required returns. For example, Melvin was aware that the federal estate tax had to be filed within a certain time. He specifically discussed the necessity of an extension with Ms. Taylor because he thought he had to liquidate some grain in order to prepare the return accurately. She did not tell him the extension was improper; she told him that it would be no problem. She filed a request to extend the time for filing the return, but failed to file for an extension of time in which to pay the tax. The copy of the federal estate tax return Ms. Taylor sent to Melvin was significantly different from the return she submitted to the IRS. The tax on the copy furnished to

---

1. Mrs. Smith executed a second Last Will and Testament in 1980. Except for the addition of a trust for Glen Haer instead of an outright be- quest, the 1980 will contained the same provisions as the will drawn in 1974.

Melvin was in the amount of $98,546; the amount on the copy sent to the IRS was $94,027. On Melvin's copy there was no indication of penalties or interest; on the IRS copy there were penalties of $3,682 and interest of $837 (the difference in the tax figures on Melvin's and the IRS's copies). In addition, Ms. Taylor overestimated the actual penalty figure on the federal estate tax return by more than 1,000 percent.

In January or February of 1985, the accounting firm where Ms. Taylor was employed was sold. Another C.P.A., Craig Sumner, took over the accounting services for the estate. It became apparent that there were several problems with the estate taxes. No Missouri estate tax had been filed as required. Melvin testified that he had specifically asked Ms. Taylor if a Missouri tax had to be filed, and she informed him that it was unnecessary. Mr. Sumner testified that Ms. Taylor had also failed to file a fiduciary income tax return for the period between June 12, 1983, the date of Mrs. Smith's death, and December 1, 1983. Apparently, Ms. Taylor had mistakenly included this estate income on Mrs. Smith's personal income tax return for 1983. Due to the numerous errors that Mr. Sumner uncovered, he was required to make various filings and prepare amended tax returns. Melvin subsequently reported Ms. Taylor to the Missouri State Board of Accountancy for malpractice.

Garth, Glen and Darrell Haer testified that they attempted several times to get information from Melvin regarding their mother's estate. Melvin told them that he did not have the information and referred them to Ms. Taylor and John Beihl, his attorney. In December 1984 Darrell and Garth traveled to St. Joseph to meet with John Beihl. They also met with an officer of Provident Savings & Loan Association, the bank where Mrs. Smith had purchased several certificates of deposit. At that time the brothers learned that Melvin had retained all the certificates of deposit for himself. Immediately thereafter, Darrell, Garth and Glen Haer retained counsel and proceeded to file this suit against their brother, Melvin.

Under the standard of review of this court-tried case, the judgment of the trial court is to be upheld unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## CONTRACT FOR SALE OF LAND

Plaintiffs sought a declaratory judgment construing the alleged oral contract between Melvin and Mrs. Smith for the sale of the 240 acre tract. The trial court concluded that the evidence supported the claim that Mrs. Smith had sold the 240 acre farm known as the "Home Place" to Melvin for a principal amount of $120,000 to be paid over a 20-year period at the rate of $6,000 per year with no interest. The trial court rejected Melvin's contention that the balance of the debt was cancelled or forgiven upon Smith's death.

■ Melvin contends the trial court erred in ordering him to pay the estate the balance due of $72,000 plus interest because plaintiffs relied principally on his testimony to establish the contract and its terms. He argues that they are bound by his testimony that the debt was to cancel on Mrs. Smith's death because they offered no evidence to the contrary. *Ramsden v. State of Illinois*, 695 S.W.2d 457, 458–9, n. 1 (Mo. banc 1985); *Manchester Bank of St. Louis v. Harrington*, 199 S.W. 242, 249 (Mo.1917); *Bowers v. Columbia Terminals Co.*, 213 S.W.2d 663, 671 (Mo.App.1948); *Mississippi Valley Trust Co. v. Francis*, 186 S.W.2d 39, 41 (Mo.App.1945). The difficulty in Melvin's argument is that contrary evidence existed and, although he consistently and repeatedly testified that his obligation to his mother was to terminate upon her death, the trial court was "free to believe all, part or none of the testimony of a witness even though such testimony is uncontradicted." *Feinstein v. Cobur Corp.*, 721 S.W.2d 763, 765 (Mo.App. 1986). "Due regard shall be given to the opportunity of the trial court to have

judged the credibility of witnesses." Rule 73.01(c)(2).

■ Darrell Haer testified that at the reading of his mother's will Melvin indicated there was a piece of paper excusing him from the payment of the balance of the money on the farm. On cross-examination Melvin denied that such a document existed. He further denied he told Darrell that such a document existed. Further, Melvin and his wife had made a loan application which stated that his mother held a mortgage on the property and that payments of $6,000 were due annually for 20 years, and it did not provide that the obligation was to cease upon his mother's death.[2]

The trial court reviewed all the documentary evidence and found that no documentation supported the contention that any remaining balance was to be forgiven upon Mrs. Smith's death. It also heard Melvin's testimony but chose to disbelieve it. Giving due regard to the trial court's judgment of the credibility of the witness, its finding that Melvin's obligations under the contract were to continue after his mother's death is affirmed generally.

The trial court ordered, however:

That there was $72,000 owed decedent by Personal Representative as a result of an installment sale . . . and that judgment is entered in said amount in favor of the estate with interest accruing at the statutory rate of 9% per annum commencing June 12, 1983 [the date of Mrs. Smith's death], and that said asset be inventoried and included in the estate.

This order is ambiguous because (1) there was no evidence that the contract was to accelerate upon Mrs. Smith's death, and (2) it purports to enter a money judgment against Melvin rather than to declare the rights of the estate in the balance due, the relief requested in the petition.

■ First, absent an express provision that the contract was to be accelerated upon Mrs. Smith's death the trial court erred in ordering the entire amount due at that time. *McDown v. Wilson,* 426 S.W.2d 112 (Mo.App.1968).

■ Second, "[i]n order to obtain a binding judgment against a defendant in his individual capacity . . . he must be sued in his individual capacity." *Kaplan v. Centerre Trust Co. of St. Louis,* 740 S.W.2d 711, 712 (Mo.App.1987); *Barnett v. Schumacher,* 453 S.W.2d 934, 937 (Mo.1970). Melvin is a party to this action only in his capacity as personal representative of Mrs. Smith's estate. Further, the plaintiffs' petition sought declarations that a principal balance of $72,000 plus accrued interest at the statutory rate existed on a contract between Melvin and Mrs. Smith, and that the principal balance and accrued interest be declared assets of the estate.

The judgment of the trial court regarding the contract for sale of land is modified to comport with the evidence and to make the trial court's findings consistent with the declaratory relief prayed.

The annual payments were due the first of March.[3] The payments for the years 1975 through 1982 were made. The estate is entitled to $36,000 for the payments due for the years 1983 through 1988 and interest accruing at the rate of 9 percent per annum from the date each payment was due. *Stewart v. Johnson,* 398 S.W.2d 850, 854 (Mo.1966); § 408.020, RSMo 1986.

This Court thus declares that a contract for the sale of land existed between Melvin and Mrs. Smith which has a remaining balance of $72,000. This Court further declares as a result of this contract Mrs.

---

**2.** Melvin contests the admissibility of the loan application. The only objection made was that it was immaterial and irrelevant and not proper rebuttal evidence. The loan application indicated that $120,000 was owed to his mother and was to be paid $6,000 a year but did not mention that the obligation would cease upon his mother's death. An inference can be drawn that since a self-cancelling term was not mentioned such provision did not exist. Therefore, the loan application was relevant and material to whether Melvin's obligation continued after his mother's death.

**3.** The evidence shows that the annual payments were made at differing times, the earliest, February 17, and the latest, April 18. However, according to Melvin's own testimony the payments were due the first of March.

Smith's estate includes the following assets:

(1) $6,000 for the payment due March 1, 1983, plus interest accruing at the statutory rate of 9 percent per annum until paid;

(2) $6,000 for the payment due March 1, 1984, plus interest accruing at the statutory rate of 9 percent per annum until paid;

(3) $6,000 for the payment due March 1, 1985, plus interest accruing at the statutory rate of 9 percent per annum until paid;

(4) $6,000 for the payment due March 1, 1986, plus interest accruing at the statutory rate of 9 percent per annum until paid;

(5) $6,000 for the payment due March 1, 1987, plus interest accruing at the statutory rate of 9 percent per annum until paid;

(6) $6,000 for the payment due March 1, 1988, plus interest accruing at the statutory rate of 9 percent per annum until paid; and,

(7) $36,000 remaining balance on the contract to be paid $6,000 a year on the first of March beginning March 1, 1989, and ending March 1, 1994.

## PENALTIES AND INTEREST CHARGES LEVIED AGAINST THE ESTATE

■ Plaintiffs' petition sought the removal of Melvin as personal representative of Mrs. Smith's estate alleging that he failed to file proper and timely estate tax returns which resulted in the imposition of interest and penalties against the estate. The trial court found Melvin legally accountable for the failure to file timely returns and the resulting consequences. The trial court therefore ordered the $3,461 in interest and penalties which had been levied against the estate to be surcharged against any amount which might be distributed to Melvin under his mother's will.

Melvin alleges that the trial court erred in finding him personally liable for the interest and penalties levied against the estate because the failure to file timely and proper returns resulted from the negligent and unethical conduct of the accountant upon whom he relied.

Under the provisions of section 473.-810(11), RSMo 1986, the personal representative is responsible for timely filing and paying estate taxes. Recognizing, however, that the preparation and filing of complicated estate tax returns often requires the services of a professional, section 473.810(14), RSMo 1986, authorizes the personal representative to:

Employ persons, including attorneys, auditors, investment advisors, or agents, to advise or assist the independent personal representative in the performance of his administrative duties; act without independent investigation upon their recommendations; and instead of acting personally, employ one or more agents to perform any act of administration, whether or not discretionary.

Nevertheless, the trial court, relying on *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), found that the failure to file timely estate tax returns was not excused by the personal representative's reliance on the accountant to whom he had delegated the responsibility. In this the court erred.

In *Boyle* the executor of decedent's estate sued for a refund of the penalty imposed for the late filing of the estate tax return by the estate's attorney. Summary judgment was entered for the executor and the court of appeals affirmed. The United States Supreme Court reversed holding the executor's reliance on the estate attorney to file the return did not constitute "reasonable cause" for the failure to file a timely return. *Boyle*, however, involved whether a penalty for late filing was owed; it did not address the question who would be responsible for the penalty imposed, the estate or the executor. Furthermore, although *Boyle* stands for the proposition that a taxpayer has a nondelegable duty to ascertain and meet unambiguous statutory deadlines for filing, the Court emphasized that the principle of non-delegation does not extend to situations in which a taxpayer reasonably relies on expert advice concerning substantive questions of tax law, such as whether a liability exists in the first instance. *Boyle*, 469 U.S. at 251, 252, 105 S.Ct. at 692, 693.

In this case, the evidence shows that the additional taxes, penalties and interest assessed against the estate resulted from the erroneous advice and ineffective assistance given to Melvin by Ms. Taylor, the estate's accountant. Melvin was aware that the federal estate tax had to be filed and paid within a specific time and asked Ms. Taylor if an extension could be obtained. She advised him that obtaining an extension would be no problem. Although she filed a request for an extension of time in which to file the return, she neglected to file a request for an extension of time in which to pay the tax. Another example of the order of error committed by Ms. Taylor concerned the filing of the Missouri estate tax return. Melvin asked Ms. Taylor if such a return needed to be filed and was advised that it was unnecessary. In these circumstances, the failure to file timely returns was not due to a lack of diligence or dereliction of duty on the part of Melvin with regard to ascertaining and meeting filing deadlines, but rather due to his reliance on Ms. Taylor's erroneous advice and assistance regarding substantive issues.

*In re Estate of Gangloff v. Borgers,* 743 S.W.2d 498, 503 (Mo.App.1987), specifically rejects the applicability of *Boyle* to a determination whether the estate or the personal representative is responsible for a penalty imposed as a result of a delay in filing an estate tax return where the personal representative has retained and relied on a professional to prepare and file the return. In *Gangloff* the trial court entered judgment ordering the personal representative to pay over $8,000 in penalties and interest assessed against the estate because of delayed filing of the estate tax return. The personal representative appealed, arguing it was error to have charged him with the penalties and interest assessed because he had acted on the advice of the attorney who had been engaged to prepare and file the return. In reversing the trial court's judgment, the Court of Appeals, Eastern District, emphasized that Missouri's probate code expressly permits the personal representative to delegate responsibility to and rely on the advice of a professional. *Gangloff,* 743 S.W.2d at 503; § 473.810(14).

The court held that a personal representative was not to be held strictly liable to the estate for "the errors, omissions or malfeasance of the estate's agents" in the absence of evidence that the personal representative's delegation or reliance was unreasonable. *Gangloff,* 743 S.W.2d at 503.

The record demonstrates that Melvin's delegation and reliance on Ms. Taylor were reasonable. Having no experience or familiarity with estate tax preparation, he retained the services of Ms. Taylor, a certified public accountant. Melvin relied upon Ms. Taylor to prepare and file the required tax returns for the estate. Melvin had no reason to question Ms. Taylor's competency until Mr. Sumner, the accountant who replaced her, discovered various problems with the estate taxes. Accordingly, the trial court's order directing the $3,461 in taxes, interest and penalties which had been levied against the estate to be surcharged against any amount which might be distributed to Melvin under his mother's will is for reversal. The estate is not without a remedy for the damages it has sustained as a result of Ms. Taylor's malpractice; Melvin, as personal representative, can bring a malpractice action on behalf of the estate against her.

## THE CERTIFICATES OF DEPOSIT

In connection with the discovery of estate assets, the trial court found that proceeds of the certificates of deposit jointly titled in the names of Faye V. Smith and Melvin L. Haer properly vested in Melvin at the time of his mother's death with the exception of the interest accumulated and undistributed at the date of Mrs. Smith's death which the court found to be an asset of the estate. Although the trial court found that there was no fraud or undue influence involved in the titling of the certificates of deposit, it ordered the accumulated interest to be inventoried and added to the estate's assets. In so doing, the court misapplied the law.

Section 362.470, RSMo 1986, provides that when an account is established "in the name of the depositor and any one or more other persons," the account becomes the

property of these persons as joint tenants. It further provides:

> The making of a deposit in such form, and the making of additions thereto, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which ... any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions thereto and all interest thereon in the survivor.

§ 362.470. Once it was conclusively established that the jointly held certificates of deposit vested in Melvin, "all interest thereon" vested in Melvin as well. *See Estate of Ferling*, 670 S.W.2d 109, 112–13 (Mo. App.1984). Therefore, the judgment of the trial court must be reversed insofar as it declares the accumulated interest to be an asset of the estate and orders the accumulated interest to be inventoried and included in the estate.

On their cross-appeal, plaintiffs claim that a constructive trust should have been imposed on the certificates of deposit. They contend that substantial evidence demonstrates that Melvin understood that his mother wished to have the proceeds from the jointly titled certificates of deposit equally divided among her sons, and that Melvin violated the confidence and trust placed in him by his mother by keeping the certificates of deposit for himself. They further charge that it was error for the trial court to refuse to consider the issue of constructive trust on the grounds that the issue was not timely pleaded because evidence bearing on that issue was admitted without objection, thereby impliedly amending the pleadings.

 Assuming it was error by the trial court to rule that the issue of a constructive trust was not timely pleaded, the ultimate disposition of that issue is controlled by the operation of section 362.470. The language of the statute is clear and unequivocal. Absent a finding of fraud or undue influence, the joint titling of the certificates of deposit was conclusive evidence of Mrs. Smith's intention to vest title to the accounts in Melvin upon her death. *See Estate of Ferling*, 670 S.W.2d at 112–

13. Plaintiffs contend that constructive trust was proper because they proved Melvin breached a confidential relationship with his mother which is, in itself, constructive fraud. *Thompson v. Williams*, 671 S.W.2d 442 (Mo.App.1984). The trial court found a confidential relationship existed, but that no evidence was presented that Melvin exerted any influence to induce his mother to jointly title the certificates of deposit with him or that she directed him to distribute the proceeds to anyone.

## COSTS

In his final point, Melvin contends the trial court abused its discretion in assessing all costs against him individually and not as personal representative because both parties prevailed on certain issues at trial.

 Section 472.040, RSMo 1986, of the probate code provides: "In all suits and other proceedings in the probate division of the circuit court, the party prevailing shall recover his costs against the other party.... Whenever costs are given against executors and administrators, the estate shall pay the costs." A party need not prevail on all issues to be a prevailing party for purposes of the statute. *See Drey v. McNary*, 529 S.W.2d 403, 412–13 (Mo. banc 1975). In this case, plaintiffs prevailed at trial on all major issues with the exception of title to the jointly held certificates of deposit and removal of Melvin as personal representative. In the trial circumstances, the taxing of costs against Melvin was not an abuse of discretion. However, under the disposition of the various issues presented on appeal, the costs are best shared equitably, and the trial court's judgment taxing all costs against Melvin should be reversed and remanded with instructions for the trial court to assess costs in equal amounts against the plaintiffs, Melvin as personal representative, and Melvin individually.

## CONCLUSION

For the reasons stated, the judgment of the trial court is modified in part, affirmed in part, and reversed in part with directions

as follows: the order directing Melvin to pay $72,000 plus interest to Mrs. Smith's estate is modified as set out above; the order directing $3,461 in interest and penalties to be surcharged against any amount which might be distributed to Melvin under his mother's will is reversed; the order directing the accumulated interest on the certificates of deposit to be inventoried and included in the estate is reversed; the order taxing all costs against defendant is reversed with instructions to assess costs in equal amounts against the plaintiffs, Melvin as personal representative, and Melvin individually. The judgment and orders of the trial court are, in all other respects, affirmed, and the cause is remanded.

BILLINGS, C.J., BLACKMAR, WELLIVER, ROBERTSON, and RENDLEN, JJ., and MAUS, Special Judge, concur.

COVINGTON, J., not sitting.