CASE 95—PETITION EQUITY—MAY 25.

# Walker, &c., v. Walker's Executors, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

LIABILITY OF EXECUTOR FOR ACTS OF CO-EXECUTOR.—In the ordinary administration of estates, one of two or more representatives is not bound for the acts of another, unless he had such facts before him as would have convinced one of ordinary prudence that the assets in the hands of his co-representative were unsafe or being wasted; and even then an executor is not liable for the acts of his co-executor where the latter has been vested with title to that part of the estate in his hands, and given unlimited power over it without consulting his co-executor.

A testator directed that his mercantile business, in which was invested a large part of his estate, be continued by his son, who was partner with him in the business, until the youngest of the testator's children should arrive at age, the profits of the business to be ascertained and declared annually, and divided between the testator's wife and children. It was further provided that when the son should discontinue the business the testator's interest should be sold as his executors might direct, and the proceeds divided as the profits were to be divided. The son of the testator, the widow and a son-in-law qualified as executors. The mercantile business of the testator having become bankrupt under the son's reckless management, the devisees seek by this action to hold all the executors liable. *Held*—That the son who managed the business is alone liable. The devisees have no claim, moral, legal or equitable, upon his co-executors.

W. W. THUM AND HELM & BRUCE FOR APPELLANTS.

1. "'An administrator is not justified in placing or *leaving* assets in trade, for this is a hazardous use to permit of trust moneys; beside which, trading lies outside the proper scope of administration functions. Under circumstances not clearly imprudent, however, an executor may pursue an authority which was plainly conferred upon him by the will in this respect; though less as an executor, perhaps, than as one specially honored or burdened by the testator's personal confidence. Chancery protects the executor who can show his testator's express sanction, but scarcely beyond this and chiefly so as to keep the hazardous investment under its prudent direction. To employ trust funds in trade on the representative's own responsibility has always been

treated *as essentially a breach of trust;* and the courts have resisted. much pressure to relax the rule. And the executor or administrator so employing funds of the estate has the disadvantage of incurring all the risks, while he must account for all the profits." (Schouler on Executors, secs. 325 and 335, 326; Wms. Exrs., 1792, 1793; Barker v. Barker, 1 T. R., 295; Garland ex parte, 10 Ves., 129; Perry on Trusts, sec. 429; Burwell v. Mandeville, 2 How., 560; Pitkin v. Pitkin, 7 Conn., 307; Thompson v. Brown, 4 John Ch , 619; Lucht v. Behrens, 28 O. St., 231; Stedman v. Fielder, 20 N. Y., 437.)

"A will may direct one's executors to carry on trade after his death either with his general assets or a specific fund to be severed from the general bulk of his estate for that purpose; the latter intention is to be preferred as hazarding only a portion of the assets; and in no case is the creation of a trade, and more especially of a partnership liability, to be inferred without clear provisions of the will and unambiguous acts by the representative in pursuance of the powers conferred upon him." (Schouler on Executors, sec. 326; Stanwood v. Owen, 14 Gray, 195; 104 Mass., 583; Wms. Exrs., 1793; Kirkman v. Booth, 11 Beav., 273; Jones v. Walker, 103 U. S., 444.)

See the case of Jones v. Walker, 103 U. S., 444, which construes the will of W. H. Walker, deceased, being the will in the case at bar.

2. Liability of executor for neglect and inattention to the estate, and to the actions of his co-executor. (Schouler on Executors, sec. 402, notes 1, 2, 3, 4 and 5, and sec. 382; 7 Ves., 197; Carrico v. Brummel, 5 Ky. Law Rep., 776; Fleming v. Jones, 12 Bush, 504; 1 Mon., 256; Thomas v. White, 3 Litt., 177; Cross v. Petree, 10 B. M., 413; 11 Ves., 254; 8 Paige, 152; 3 Rich. Eq., 132; 4 Redf., N. Y., 180; Brown's Accounting, 15; Abbt's Pr. N. S., 457.)

3. Liability for acts of co-executor. ( 8 Cent. L. J., Article by Bump; Schouler on Executors, sec. 402 and notes; Story Eq. Juris., 1280; Perry on Trusts, secs. 422–23–24, 417, 418, 429, 421, 418, 416; Wms. Exrs., bottom pages 1820–1–2–3, and notes, Ed. 1877; Pomeroy's Eq. Juris., secs. 1069 and 1082.)

The cases cited by plaintiff do not contain facts from which the general principle applicable to this case can be derived. There is no respectable authority which can be produced to sustain the proposition that one executor is not liable when he stands by and permits his co-executors to invest the funds of the estate in trade, much less when he approves, recommends and participates in this breach of trust, as Breed did.

4. How far acquiescence of beneficiary prevents recovery. (Schouler on Executors, sec. 383; Perry on Trusts, secs. 467, 850; 5 Atl. Rep., 9; Wms. Exrs., p. 1836; Sterling v. Williamson, Va., 3 S. E., 533; Adair v. Brimmer, 74 N. Y.; Hauchett v. Briscoe, 22 Beav., 496.)

5. Difference between discretionary and directory or mandatory executorial trusts. (Hays v. Hays, 3 Tenn. Chy., 91; Deadrick v

Cantrell, 10 Yerg., 263, Tenn.; Cross v Petree, 10 B. M., Ky. See, also, on general question, Lincoln v. Wright, 4 Beav., 428; Clark v. Clark, 8 Paige, 150; Booth. v. Booth, 1 Beav., 123.)

6. It is the duty of all executors to watch over, and if necessary, to correct the conduct of each other; and an *executor as well as a trustee who stands by and sees a breach of trust committed by his trustee, becomes responsible for that breach of trust.* (Williams on Executors, bottom pages 1827 and 1828, Ed. 1877; Styles v. Guy, 1 Mac. and G., 433, by Lord Cottenham; Williams v. Nixon, 2 Beavan, 475, by Lord Langdale; Horton v. Brockenhurst, 29 Beavan, 510, by Lord Ramilly, M. R.; Wood v. Brown, 34 N. Y., 137; Heath v. Allen, 1 A. K. Mar., 442; Clarke v. Clarke, 8 Paige, 153; Estate of Mary Evans, 2 Ashm., 470; Johnson v. Corbett, 11 Paige, 265; Kincade v. Conley, 64 N. Car., 387; Pomeroy's Eq. Jurisprudence, secs. 1069 and 1082; Story's Eq., 1280; Perry on Trusts, secs. 417 and 418; Egbert v. Butter, 21 Beav., 560; Caudler v. Fillet, 22 Beav., 257; Weigand's Appeal, 28 Penn. St., 471; Scully v. Delany, 2 Ir. Eq., 165; Hengst's App., 24 Penn. St., 413; 2 Story's Eq. Juris., secs. 1284 and 1280; Wayman v. Jones, 4 Md. Ch., 500; Clarke v. Clarke, 8 Paige, 153.)

SHACKELFORD MILLER AND BROWN, HUMPHREY & DAVIE FOR APPELLEES.

1. The executors filed their petition for instructions as to their duty in carrying on the firm's business. The Chancellor instructed them, and they are not liable for losses incurred by following the judgment of the Chancellor. "They were compelled to obey the judgment of the court to which they had gone for advice." (Frasier's Exr. v. Page, 82 Ky., 76; Loring's Admr. v. Stenman, 1 Met., Mass., 207; Perry on Trusts, par. 928; Redfield on Wills, vol. 1, par. 36, side page 492; White v. Fisk, 22 Conn.; Crosby v. Mason, 32 Conn.; Goodhugh v. Clark, 77 N. H., 525.)

2. An executor is liable only for such assets as come to his hands, *no fraud being alleged, claimed or shown.* (Hill on Trustees, star page 309, note 4, Am. Ed.; Williams on Executors, p. 1549; Story's Equity Jurisprudence, par. 1280; Schouler on Executors, par. 402 and p. 465, note; Boyd v. Boyd, 3 Grattan, 114; Ames v. Armstrong, 106 Mass.; Jones' Appeal, 8 Watts and Searg., 143; Townley v. Sherbourne, 3 Leading Cases in Eq.; Peter v. Beverly, 10 Peters, 562; Taylor v. Bentram, 5 Howard, 275; Moore v. Tandy, 3 Bibb, 97; Lawrence v. Lawrence, Litt. Sel. Cases, 123; Roach v. Hubbard, Litt. Sel. Cases, 235; South v. Hoy, 3 Mon., 95; Young v. Wickliffe, 7 Dana, 448; Gray v. Reamer, 11 Bush, 115; Jones v. Walker, 13 Otto, 445.)

3. Wm. M. Walker, though not actually summoned in Louisville, knew and approved of the suit and judgment entered February 3, 1875.

He is now after nearly nine years' silence and approval estopped from complaining. (Bigelow on Estoppel, p. 494, note; Herman on Estoppel, pars. 324 and 327; Chapman v. Chapman, 59 Pa. St., 214.)

4. Wm. M. Walker having sold his interest to the Louisville Savings Investment Association, that corporation, having *bought with full information*, has no equitable claim in a court of conscience.

5. Frank Walker arrived at his majority in April, 1875, and had only one year thereafter to show cause against the judgment of February, 1875. (Civil Code, sec. 391; or sec. 421 of Old Code.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The questions involved in this case arise between the devisees of Wm. H. Walker on the one side, and the executors of his last will on the other. At the time of his death Walker was a prosperous merchant in the city of Louisville, and the owner of a large estate. He was the senior member of the firm of Wm. H. Walker & Co., and his son Frederick, then quite young, the junior member, the father owning two-thirds of the capital invested in the business and his son the remaining one-third. Being desirous of having the business of the firm continued, and confiding in the personal and business integrity of his son, when executing his last will and testament, he left, by certain provisions of that instrument, the sole management and control of the firm business to this son, with the right, on the part of the latter, to become an equal partner if he saw proper, instead of retaining only an interest of one-third.

By the fourth clause of his will the following devises are made: "I give and devise all the rest, remainder and " residue of my property to my children living at my " death, share and share alike, to be divided among them, " *the personalty at my death* and the realty when the " youngest of them living to be twenty-one years of age

"arrives at that age, except my interest in the capital "and good will of W. H. Walker & Co. * * * The "portion of my daughters I give in trust to my execu- "tors, for their sole and separate use, free from the mari "tal rights of any husband; and power is given to my "executors to invest and manage the personalty, and to "sell and convey the realty, and reinvest the proceeds "wherever, however and as often as said trustees may "deem best, but always to the sole and separate use of "my daughters as above."

By the eighth clause of the will, or so much as bears on the issues made, the testator says: "It is my wish that "my son Frederick carry on the business of W. H. "Walker & Co., in that name and style, and in my store- "house where it is now carried on, giving him power to "change the place, until my youngest child living is "twenty-one years of age, or for a shorter time if he "does not find it profitable. To that end all my capital "and interest in that concern shall be continued therein, "and shall be chargeable for its debts and liabilities, but "my other property shall not be so chargeable. * * * "Frederick is not to be charged with five thousand dol- "lars advanced him on his becoming of age, and he is to "have the privilege to purchase at a fair valuation, and "upon reasonable time, such portion of my share in said "concern and its good will as will make his share equal "to one-half. What he may so pay is to be divided as "profits of the concern. While my store-house is occu- "pied by the firm it shall pay rent therefor. The profits "of the concern, which shall be ascertained and declared "on the first of January after my death, and annually

" thereafter, shall be divided between my wife and chil-
" dren, or their descendants and others, as my personalty
" is to be divided among them. When my youngest
" child living to be twenty-one years of age arrives at
" that age, or at the death of my son Frederick before
" that time, or when he discontinues the business, my
" interest in the concern and its good will shall be sold as
" my executors may direct, and the proceeds divided as
" the profits thereof are to be divided."

At the time of the testator's death he left some valua-
ble but unproductive real estate and but little personalty,
and, as the record shows, some of the real estate had to
be sold to pay taxes and other charges against the estate,
about which there is no controversy. The testator, in his
lifetime, evidently looked to the profits of the mercantile
firm for the support of a large family, and realizing the
fact that such an expenditure must still continue, pro-
vided by his will that the profits of the firm should be
annually declared and paid out to his wife and children.
Some five or six of his children were then infants, resid-
ing, after his death, with their mother and the adult
children engaged in business. Such was the condition of
the testator's estate and family at his death; and after
his decease his wife, Mary, his son, Frederick, and his
son-in-law, James E. Breed, qualified as executors with-
out surety (such being the request of the testator), each
executing an individual bond. The wife, Mary, was also
appointed guardian of the infants.

His son, Frederick, undertook the management and
control of the firm of W. H. Walker & Co., purchasing
for himself the additional one-sixth interest, thereby

making him a half owner, and crediting the estate of his father on the books of the firm by the sum to be paid by him.

In a year or two after the death of the testator his executors (three of them) all united in a petition to the Chancellor, alleging *a doubt as to the nature of their authority and powers under the will;* and as the estate could not be wound up until the youngest child arrived at age, it was of the utmost importance that they be guided in the discharge of their duties by the Chancellor, and that their accounts be from time to time settled, etc.; and to the end that justice may be done, and all errors or mistakes made, if any, *be avoided in the future, and that plaintiffs may be instructed in their trust, and protected in their execution of the same, the plaintiffs pray the court to construe the will of W. H. Walker, and define the powers and duties of the plaintiffs as executors ;* and further, that the cause be referred to the commissioner for a settlement of their accounts, etc.

On this petition all of the devisees were before the court except the appellant, William Walker, who seems not to have been served with process. The cause was submitted for a construction of the will on the petition of the executors, and a judgment rendered, in which it was said by the Chancellor, that but for the money arising (meaning the profits) from the firm of Walker & Co. the landed property of the estate must have been sold at a sacrifice, and that (in his opinion) the continuation of the business was not only fully authorized but judicious; that it was not necessary for the executors to withdraw the profits ascertained at the end of each year ; that the

withdrawal of the funds from time to time, during the current year, for the payment to those entitled, was a substantial compliance with the will; "*the executors are au-*" *thorized by the will, as this court construes it, to leave the* "*profits in the concern, and withdraw from time to time* "*such funds as may be requisite for the purposes of the* "*estate.*"

This was the instruction by the Chancellor to the executors in regard to their official duties, and the construction placed on the provisions of this will on the petition of the executors. The Chancellor, placing himself in the position of the testator in the conduct of his business at the date of the will in question, and the means necessarily resorted to for the support of his family, and the object testator had in view in confiding to his son the control of this large mercantile firm, saw the necessity for withdrawing the profits as the wants of the family might require, six of them then being infants, and said to the executors: "You can leave the profits of the firm in "the concern, *and withdraw them when required for the* "*purposes of the estate.*"

It was regarded as a safe depository for these profits, and the Chancellor, in permitting Frederick to retain their custody, subject to the demands of the adult children or the guardian of the infants, who was the mother and a co-executor, was confiding a much less sum to the control of Frederick than the testator, who had confided to him the sole care and control of the most valuable part of his estate, and that which produced the only income for the support of his wife and children. The report of settlement made by the commissioner, under the original

petition filed by the executors for settlement, shows a profit then of about eighteen thousand dollars, for which Frederick was liable, and the business being in a prosperous condition, there was no reason, at that time, to anticipate the incurring of liabilities by Frederick that, in a short time, involved the entire estate in financial ruin.

The business conducted by the firm was that of the purchase and sale of whisky, and in the conduct of this business it was indispensable, as the proof shows, to have indorsements of paper by way of accommodation for the firm, and the firm would return the favor by making like indorsements for others. Such was the manner, but in a more judicious way, in which the testator had conducted the business that resulted in making the firm of W. H. Walker & Co. a substantial monied concern. The firm, when the son took control of it, indorsed for Jordan and others, who also indorsed for W. H. Walker & Co., and the former becoming a bankrupt, the liabilities of the firm, arising from its own indebtedness and its liability as indorser, wrecked the entire firm property financially, and the whole was lost to the estate.

After this failure of Fred. Walker, or the firm of Wm. H. Walker & Co., the executors filed a supplemental petition in the action filed in 1874, alleging the bankruptcy of the firm, and asking for a settlement of their accounts as executors. To that supplemental petition the appellants' filed answers, in which they seek to make the co-executors with Fred. Walker liable for the acts of the latter in the management of the firm business of Wm. H. Walker & Co., his misappropriation of the profits of that firm, and the unlawful use by him of assets belong-

ing to the estate of his father, and for which he has failed to account.

It is evident from the proof, and the report of the commissioner in this case, that neither James E. Breed or Mary Walker, the co-executors, took any control of the firm business confided by the testator to his son Frederick, nor did they handle any money of the estate. Mrs. Walker, perhaps, received the proceeds (small in amount) of some real estate that has been accounted for, and in regard to which there is no dispute.

The first, and one of the principal, questions in this case arises as to the liability of the co-executors, who qualified with Frederick Walker as such, for his mismanagement of the firm property. No joint bond was executed by the executors, and the entire firm business placed by the will of the testator under the control of the son for an indefinite period, and not subject even to the supervision of his co-executors. This firm property had been in fact severed from the general estate of the testator, and not made the subject of disposition by the executors as such. It was made, by the will, a special trust confided to the son, the proceeds or profits of which he was required to apply in a particular manner, and by the very terms of the will, and the character of the business and property placed in the custody of the son, it was rendered impracticable for the co-executors to share in its management or to look to the application of its results. The testator never contemplated that any one else should have the right to control this special devise, or become responsible for the manner in which it was conducted, or that his other executors were to look to

the appropriation of the profits. It was a special trust that his son was required to execute. That the trustee for his daughters or the guardian of his infant children might be held responsible for laches in not requiring the son to execute this special trust may be conceded, but that it was the duty of the co-executors, as such, who had been deprived of the property or its use by the will of the testator in the creation of the special trust, to look to the application of the proceeds, or the proper use of the property itself, can not be maintained. The property did not pass to the executors, but was vested in the son in trust for the purposes contemplated by the testator. This court has always recognized the doctrine of the common law as to the liability of one executor for the acts of the other; and the personal representative who has been faithful to his trust may plead *plene administravit*, although his co-executor has committed a *devastavit*. (Moore's Adm'r v. Tandy, 3 Bibb, 97; Young v. Wickliffe, 7 Dana, 447.)

As one executor has no power to prevent his co-executor from receiving the assets, his liability is confined to the assets he receives, unless he connives at the *devastavit* of his co-executor, or omits to perform some duty that is made imperative by the will. A will directing the investment of monies for a particular purpose must be executed by the representatives who undertake the performance of the trust; and to permit the money to be collected by one executor, and to be retained by him for his own purposes, or for such a length of time as would be unreasonable instead of making the investment, would make all responsible; but in the ordinary administration

of estates the one representative is not bound for the acts
of the other unless he has such facts before him as would
convince one of ordinary prudence that the assets in the
hands of his co-representative are unsafe or being wasted.
This doctrine of liability on the part of an executor for
the acts of another has never been carried so far as to
hold one who qualifies as executor liable for the acts of
his co-executor, when the latter has been vested with title
by the will to a part of the estate, and given unlimited
power over it without consulting his co-executor. Here
the son Frederick owned one-half of the firm assets, and
was empowered to conduct the firm business until the
youngest child of the testator became of age, this part
of the estate having no connection with the executorial
duties of these appellants. The profits were to be paid
over by the son, who was a trustee vested with an uncon-
trolled discretion, and no duty devolved upon his
co-executors to look to the management of the trust
fund.

The son was empowered by the eighth clause of the will
to purchase an additional interest in the firm business.
He made this purchase by debiting the one side and cred-
iting the other, and it remained there *as profits*, to use
the language of the will, to be appropriated by the trus-
tee for the benefit of the family, and the adult appellants
had as much right to compel the payment of the profits
over to them as these executors had, who are sought to
be made liable.

It would be unreasonable to hold that the appellees,
Breed and Mrs. Walker, the widow, were bound to
look to these profits and their appropriation by this

trustee of the firm assets, from the time they qualified until the youngest child became of age.  It was never contemplated by the testator, and the views of the Chancellor, expressed in his judgment of instruction to these executors in the year 1875, embodied the idea that as Frederick had unlimited control over this firm property, his co-executors had nothing to do with it, and the profits could be withdrawn as the wants of the estate or the devisees required it.  As to the insurance money collected by Frederick, the co-executor, and other small sums appropriated to the firm purposes, it clearly appears that he paid out to the widow for her children, and to the other devisees, and for the interests of the estate, a much greater sum than he received; in fact, his payments amount to more than he received, including the profits realized from the firm property.

There is, we think, no rule of law or equity that would hold these co-executors liable in this case.  They have been guilty of no fraud, and even if required to look to the profits of the firm business, they had no reason to believe that the son was wasting the estate or misappropriating the trust fund.  The testator, in his desire to continue the business in which he had accumulated his fortune, saw proper to place the bulk of his estate under the control of his son, in whom he had the greatest confidence, and who has abused that confidence only to the extent of making indorsements that were unfortunate and reckless, causing the loss of his entire estate.  These devisees have no claims, moral, legal or equitable upon those, who were, as well as themselves, recipients of the

bounty of the testator, and who have sustained in common with them this great pecuniary loss.

. We must affirm the judgment of the Chancellor as to the appellees, Breed and Mrs. Walker, but as to the appellee, Fred. Walker, the judgment is reversed, and cause remanded with directions to refer the case to the commissioner to fix his liability, which may be easily determined by the report adopted by the commissioner in the record before us. His liability for the firm assets can not be doubted.