Barbara A. JONES, Appellant,

v.

Michele V. HAGANS, Arthur L. Content and Charles I. Bryant, as Personal Representatives of the Estate of Theodore R. Hagans, Jr., Appellees.

Nos. 92–PR–725, 92–PR–884.

District of Columbia Court of Appeals.

Argued Oct. 5, 1993.
Decided Dec. 20, 1993.

---

Michael F. Curtin, with whom Douglas E. Fierberg and Robert E. Sarazen, Washington, DC, were on the brief, for appellant.

Arthur F. Lafionatis, with whom Allen V. Farber and James A. Barker, Jr., Washington, DC, were on the brief, for appellees.

Before ROGERS, Chief Judge, KING, Associate Judge, and MACK, Senior Judge.

ROGERS, Chief Judge:

Appellant, Barbara A. Jones, appeals from an order approving the ninth account for the estate of Theodore R. Hagans, Jr. In that account, a $250,000 certificate of deposit, which had been pledged to a corporation wholly owned by the estate, was transferred to the corporation as a capital contribution, and tax penalties were paid by the estate. On appeal, Ms. Jones contends that the trial judge abused his discretion by approving the ninth account without ordering the personal representatives to disclose additional information about the transfer of the certificate of deposit. She maintains that she was entitled to a full accounting of the corporation's records and a hearing in order to evaluate the allegations of self-dealing. She also contends that the trial judge was clearly erroneous in approving the ninth account in view of the conflict of interest arising from the transfer of the certificate of deposit. Finally, she contends that the trial judge abused his discretion by approving the charge of tax penalties against the estate in the absence of a finding that the personal representatives were not at fault.

We hold, in view of the broad powers granted to the executors under the will, and the nature of the one-third interest in the residuary estate provided in the will for Ms. Jones, that she has failed to demonstrate an abuse of discretion or clear error by the trial judge in approving the ninth account insofar as the transfer of the certificate of deposit from one part of the residuary estate to another is concerned. However, we conclude that a remand is required regarding the charge of the tax penalties against the estate.

Accordingly, we affirm the order approving the ninth account of the estate with the exception of the charges against the estate for tax penalties; on that issue we reverse and remand the case to the trial court to determine whether the personal representatives were without fault in regard to the tax penalties, and if not, to amend the ninth account to delete those charges against the estate.

I.

When Theodore R. Hagans and his son died accidentally in an airplane crash in April 1984, Ms. Jones became a one-third beneficiary of Mr. Hagans' residuary estate under the terms of his will and Mr. Hagans' daughter, Michele, became a two-thirds residuary beneficiary. The will also appointed Mr. Hagans' daughter, Michele, and his friends, Arthur L. Content and Charles I. Bryant,[1] as executors of the estate. Under the will the testator gave them broad powers as executors "to ... pledge any property," and "[t]o take any action with respect to conserving or realizing upon the value of any property" in the estate. The will defined the residuary estate to include both the certificate of deposit at issue and several incorporated businesses, one of which was the Fort Lincoln New Town Corporation (Fort Lincoln). The trial court appointed the three executors named in the will as the personal representatives for the estate.

In December 1984, the certificate of deposit was pledged to a letter of credit held by Crestar Bank in connection with a development contract between the District of Columbia government and the Fort Lincoln corporation that required the corporation to maintain a letter of credit. The current $250,000 letter of credit was issued on behalf of the Fort Lincoln corporation in December 1984, replacing two instruments obtained before the testator's death, a letter of credit issued in 1975 and a bond issued in 1983. The issuing bank of the current letter of credit required collateral to be posted in the form

---

1. The will appointed three co-executors: the testator's son, the testator's daughter, and Arthur Content. The will appointed Charles I. Bryant as an alternate, and he became an executor as a result of the death of the testator's son.

of a certificate of deposit. The estate accordingly placed a certificate of deposit for $250,000 with the bank. In March 1991, the estate transferred the certificate of deposit (which was pledged to Crestar Bank) to the Fort Lincoln corporation as a capital contribution. Ms. Jones does not challenge the propriety of the pledge of the certificate of deposit in 1984, only the subsequent transfer in 1991.

In July 1990, the personal representatives filed the ninth account and a motion for adoption of the plan and distribution for the estate. Ms. Jones filed objections to the account.[2] At a hearing in May 1992, Ms. Jones objected to the 1991 transfer of the certificate of deposit to the Fort Lincoln corporation on two grounds. She argued that (1) absent the transfer, the certificate-of-deposit funds would have been available for distribution from the estate and she would have received $83,333.33, rather than minority shares in a closely-held corporation, and (2) she needed information about the corporation's accounts in order to determine whether it was necessary for the Fort Lincoln corporation to be so capitalized or whether the corporation had other funds that could have been used as collateral for the letter of credit. She also maintained that the trial judge needed this information before he could approve the ninth account. Ms. Jones, therefore, requested the trial judge to order a further accounting on her behalf from the personal representatives.

The trial judge approved the account without ordering any further disclosures by the personal representatives. The judge reasoned that since the money had already been pledged for the corporation's letter of credit, and the corporation was wholly owned by the estate, the transfer of the certificate of deposit was not a significant change in the assets of the estate. The judge rejected Ms. Jones' arguments that the personal representatives, in transferring the certificate of deposit to the Fort Lincoln corporation, had breached their fiduciary duty to the residuary beneficiaries, and that, in view of Michele

Hagans' additional position as president and director of Fort Lincoln, there was a conflict of interest and an inference of self-dealing. The judge found that Michele Hagans and the two other personal representatives had the authority under the will to transfer the certificate of deposit. In addition, over Ms. Jones' objection, the trial judge ruled that there was no universal rule prohibiting the charging of tax penalties to the estate, and that the amount at issue was de minimis in relation to the size of the estate and an inquiry into who was at fault would cost more than payment of the $7,616.05.

## II.

Appellant, Barbara A. Jones, raises two related claims of error by the trial judge regarding the transfer of the certificate of deposit to the Fort Lincoln corporation.

## A.

■ First, Ms. Jones contends that the trial judge abused his discretion by not ordering the personal representatives to disclose the financial records of the Fort Lincoln corporation before approving the ninth account of the estate. At trial, Ms. Jones argued that, "the very threshold ... should be that we have the right to find out whether or not there is any money ... in Fort Lincoln New Town Corporation so that they could have put up that Certificate of Deposit to collateralize the Letter of Credit that it owned." Specifically, Ms. Jones stated that she needed a full disclosure of the corporation's operations to determine (1) whether independent security was sought or available, (2) whether the security agreement was still in effect or could be renegotiated, and (3) whether the corporation had sufficient assets of its own to use as security.

"The beneficiary is always entitled to such information as is reasonably necessary to enable him [or her] to enforce his [or her] rights under the trust or to prevent or redress a breach of trust." RESTATEMENT (SECOND) OF TRUSTS § 173 cmt. c (1959). In

---

2. The trial judge granted the motion for adoption of the plan of distribution on January 21, 1992. On January 31, 1992, Ms. Jones filed a motion to

reconsider and vacate that order and the trial judge granted the motion to reconsider on May 6, 1992.

the instant case, the personal representatives did provide information to Ms. Jones about the transfer of the certificate of deposit, and the question is simply whether it was sufficient. The District of Columbia Probate Reform Act is not particularly enlightening on this point. It requires accounts to contain the value of any assets and to list all transfers or sales that affect the estate, but it does not address whether the financial accounts of a corporation held by the estate must be made available to the beneficiaries. *See* D.C.Code §§ 20–723, –724 (1989). Nor have the parties cited any District of Columbia case law on point.

Ms. Jones relies on *In re Shehan's Will,* 285 A.D. 785, 141 N.Y.S.2d 439 (N.Y.App.Div. 1955), where a beneficiary objected to the accounts filed by the trustee, who was also a beneficiary, as well as a shareholder and an officer and director of a corporation substantially owned by the estate. The beneficiary requested a broad inquiry into the conduct of the trustee, alleging that the accounts failed to reveal material facts and that the trustee had been personally enriched at the expense of the objecting beneficiary. The court ordered a broad inquiry into the trustee's actions, stating that where a corporation is wholly owned by an estate a full report of corporate transactions may be required from the fiduciaries of the estate. *Id.,* at 445 141 N.Y.S.2d (citations omitted). The court concluded that the obligation to account for corporate transactions is particularly important where the trustee held possibly inconsistent positions, such as trustee, remainderperson and director. *Id.* at 447–48.

Although Michele Hagans similarly held these potentially conflicting positions, the indicia of self-dealing was much stronger in *In re Shehan's Will. Id.* at 442 (claim that fiduciary enabled corporation to accumulate unnecessary surplus to advantage of remainderperson (himself) and disadvantage of life tenant beneficiary). Ms. Jones makes no claim of personal enrichment by Michele Hagans. Indeed, she hardly could since the certificate of deposit was pledged to and ultimately was transferred to a corporation wholly owned by the estate. Had the funds in the certificate of deposit been distributed to the residuary beneficiaries, Michele Hagans would be entitled to one-third more than Ms. Jones. Consequently, because there is no evidence of self-dealing here, the need for full disclosure is weaker than in *In re Shehan's Will.*

Nonetheless, the *Shehan's* case lends support for Ms. Jones' contention that she should have been allowed further disclosure of corporate records in view of the fact that the corporation was wholly owned by the estate. While the personal representatives of the estate maintain that all *material facts* were disclosed before the transfer was approved, the corporate records of the Fort Lincoln corporation could also be deemed material to the issue of whether the transfer was necessary.[3] To that extent, Ms. Jones might have been entitled to a further accounting of the estate's assets and the transfer of the certificate of deposit.

But, the difficulty with Ms. Jones' position is that the additional accounting she requested would not produce the result she seeks, namely the voiding of the transfer of the certificate of deposit to the Fort Lincoln

---

**3.** The seven material facts listed by the personal representatives in their brief are:

(1) The $250,000 [certificate of deposit] had been pledged in 1984, the year of decedent's passing, as collateral for a letter of credit ...;

(2) NS & T Bank required in 1984 that the [certificate of deposit] be posted as collateral as a condition of issuing the letter of credit;

(3) The Personal Representatives had decided in 1984 that the value of ... [the Fort Lincoln corporation] would be best preserved by fulfilling the land development contract,.... The letter of credit and [certificate of deposit] were necessary parts of taking that course;

(4) The [certificate of deposit] remained pledged to NS & T Bank's successor, Crestar Bank, when it was transferred to [the Fort Lincoln corporation] in 1991;

(5) The Estate owned [the Fort Lincoln corporation] in its entirety when the initial pledge was made, and when the [certificate of deposit] was transferred ...;

(6) The three Personal Representatives, not just Michele Hagans, made the decision to transfer the [certificate of deposit] to [the Fort Lincoln corporation];

(7) The two residual beneficiaries, Jones and Michele Hagans, had interests of one-third and two-thirds, respectively, in the Estate at all times....

corporation. Even if the corporation's records were to reveal that the corporation had other assets that could have been used to collateralize the letter of credit, that would not make the transaction voidable. To void the transfer, Ms. Jones would have to show bad faith on the part of the trustees. *In re Pincus' Estate*, 378 Pa. 102, 105 A.2d 82, 86 (1953); *Ohio Casualty v. Hallowell*, 94 Md. App. 444, 617 A.2d 1134, 1139 (1993). However, Ms. Jones makes no claim, much less any showing, that the transfer adversely affected the residuary estate or involved any self-dealing. Hence, the instant case is unlike *In re Shehan's Will, supra*, 141 N.Y.S.2d 439, where there was evidence the trustee was favoring the remainderperson (himself) over the life tenant. Moreover, Ms. Jones does not claim that further information would enable her to prove any bad faith. Thus, the trial judge could reasonably conclude that there was no reason for further disclosure of the corporation's books to Ms. Jones. The information was not critical to Ms. Jones in light of the fact that the certificate of deposit had been pledged since 1984 (and was, therefore, encumbered prior to the transfer), and the transfer was intra-estate. Ms. Jones remained a one-third owner of the residuary estate, which included both the certificate and the corporation. Under the will, she was not entitled to a particular type of asset in the residuary estate, such as a highly liquid asset in the form of a certificate of deposit as distinct from a one-third share of the corporation. Nor does Ms. Jones claim, or show, that the transfer adversely affected the value of the residuary estate as a whole.

 Likewise, we find no merit to Ms. Jones' contention that the trial judge abused his discretion by approving the ninth account of the estate without conducting a further review of the circumstances surrounding the estate's transfer of the certificate-of-deposit funds. Ms. Jones asserts that such a review is required to determine whether the transfer was necessary. However, this type of oversight of the management of estate assets is inconsistent with the appropriate role for the court. Courts should generally be slow

to entertain attacks on decisions of trust administrators "except when it is made to appear that they have acted out of fraud, malice, bad faith, or in an arbitrary abuse of their discretionary powers." *Kloman v. Doctors Hosp., Inc.*, 76 A.2d 782, 785 (D.C.1950).

There was no evidence of fraud, malice or bad faith in the instant case, and the trustees were clearly acting within their discretion in transferring the certificate of deposit. The executors were given broad authority under the will to transact business in this manner. Moreover, the transfer of the certificate of deposit was intra-estate; no money was being taken out of the residue owed to the beneficiaries. Thus, there was no evidence on which the trial judge could rely in concluding that the transfer of the certificate was unauthorized or a breach of fiduciary duty. Accordingly, we find no abuse of discretion by the trial judge in refusing to require the personal representatives to disclose further information for review by the court.

### B.

 Second, Ms. Jones contends that the trial judge clearly erred in approving the ninth account because there was evidence of self-dealing by one of the personal representatives, Michele Hagans. Ms. Jones asserts that the potential for conflict and actual conflict are evident from the fact that Michele Hagans was the president and director of the Fort Lincoln corporation, as well as a personal representative, at the time that the certificate of deposit was transferred in 1991. However, the mere existence of a conflict is insufficient to show self-dealing where the conflict was created by the provisions of the will. *Goldman v. Rubin*, 292 Md. 693, 441 A.2d 713, 723 (1982); *In re Pincus' Estate, supra*, 105 A.2d at 86–87.

 The testator provided in his will that Michele Hagans was to be the majority shareholder of the corporation in the event she survived the testator and his son, thereby making it likely she would be an officer of the corporation.[4] Further, she was given

---

4. While the record does not indicate whether Michele Hagans was an officer of the Fort Lin-

coln corporation at the time of her father's death, or whether the testator knew his daughter would

broad powers under the will as an executor of her father's estate. Therefore, Ms. Jones' argument that Michele Hagans held conflicting positions when she transferred the certificate of deposit to the corporation is effectively answered by the fact that any conflict of interest was created by the will itself. *Cf. Goldman v. Rubin, supra,* 441 A.2d at 722 (testator appointed as his personal representatives four of the directors of the corporation held by estate). Because the potential conflict was created by the testator, Ms. Jones would have to show bad faith on the part of the personal representatives in order to overcome the presumption of regularity of the personal representatives' conduct. *Id.* at 724. While the testator's contemplation of the trustee's position of possible conflict will not excuse an actual breach by the trustee, *id.,* there has been no such showing here. Although the transfer of the certificate of deposit may have benefitted Michele Hagans by giving her greater control over the pledged funds, the transfer also presumably benefitted the residuary estate by ensuring the financial viability of the Fort Lincoln corporation, an asset of the estate. Ms. Jones makes no claim, or showing, to the contrary.

The instant case is unlike *In re Shehan's Will, supra,* 141 N.Y.S.2d 439, where the protesting beneficiary alleged that the personal representative was personally benefitting at the expense of the beneficiaries. Here, the increased collateralization of the corporation increased the value of that estate asset to both Michele Hagans and Ms. Jones. The transfer of the certificate of deposit cannot be deemed self-dealing when it is done in good faith for the benefit of the estate. *Ohio Casualty, supra,* 617 A.2d at 1139. Since no bad faith by Michele Hagans was shown at trial, the trial judge did not clearly err in approving the transaction. *See In re Pincus' Estate, supra,* 105 A.2d at 86.

### III.

■ Regarding approval of the charge of the tax penalties against the estate, Ms. Jones contends that the trial judge abused his discretion by permitting the estate to pay the tax penalties without determining whether the charges should have been levied against the personal representatives. The tax penalties accrued because the amount of the federal estate tax that should have been withheld had been underestimated. The personal representatives admit in their brief on appeal that they do not know who is at fault. There was no evidence before the trial judge to show whether the penalties accrued due to an error by the personal representatives or if the representatives had reasonably relied on an accountant's judgment. *See Estate of Smith,* 767 S.W.2d 29, 35 (Mo.1989) (en banc). The trial judge overruled Ms. Jones' objection to the payment of the penalties by the estate on the grounds that "there is no automatic rule with respect to the disallowance of tax penalties as proper administrative expenses now in effect in the District of Columbia," and the tax penalties involved were de minimis in relation to the size of the estate. During the hearing the judge commented that a determination of fault would cost more than payment of the penalties.

■ The law generally holds the trustee liable if the penalties accrued due to the trustee's error.

Courts have generally taken the position that an executor, administrator, or trustee ... whose violation of a tax law provision has resulted in the assessment and imposition of a penalty ... is, in the absence of some showing of proper excuse, or of extenuating circumstances, personally liable to the estate or trust which he represents for such penalty, interest or additional tax.

*Liability of Executor, Administrator, Trustee, or His Counsel, for Interest, Penalty, or Extra Taxes, Assessed Against Estate Because of Tax Law Violations,* 47 A.L.R.3d 507, 510 (1973). The personal representatives cite no contrary authority—indeed, they cite only *Estate of Smith, supra,* 767 S.W.2d at 35, which adopts the general rule.

The fact that the penalties are small in regard to the size of the estate does not change the analysis. *See Cook v. Aronheim,*

---

become the president of the corporation, this was foreseeable since Michele Hagans was given a

majority share of stock of a closely-held corporation.

186 Md. 138, 46 A.2d 105, 106 (1946) (refusing to charge $49.53 in tax penalties against the estate where the trustee did not explain its delay in filing estate tax returns). Nor need the personal representatives' burden be great. We agree with the distinction noted in *Estate of Smith, supra,* 767 S.W.2d at 35–36, between the non-delegation of the personal representative's responsibilities to ascertain when an estate tax return is due and to ensure that it is timely filed, and the delegation that occurs when the personal representative "reasonably relies on expert advice concerning substantive questions of tax law, such as whether liability exists in the first instance." Sworn affidavits by the personal representatives of their reasonable and good faith reliance on the accountant, who by affidavit attests to his good faith preparation of the estimation of taxes, would likely suffice without further litigation.

Accordingly, we affirm the order approving the ninth account of the estate with the exception of the charges against the estate for tax penalties; on that issue we reverse and remand the case to the trial court to determine whether the penalties (and any interest charges) resulted from a violation of the personal representatives' duty, and if so, to delete those charges against the estate.