Quentin C. PAIR, et al., Appellants,

v.

Thomas H. QUEEN, et al., Appellees.

No. 08–CV–1646.

District of Columbia Court of Appeals.

Argued April 13, 2010.

Decided Aug. 26, 2010.

Roger A. Hayden, II, with whom Jeremy D. Rachlin, Bethesda, MD, was on the brief, for appellants.

Johnny M. Howard, Washington, DC, for appellees Thomas H. Queen and Thomas H. Queen & Associates.

Rudolph D. Smith filed a brief, pro se.

Before RUIZ, KRAMER, and FISHER, Associate Judges.

FISHER, Associate Judge:

Appellants, personal representatives and beneficiaries of Dr. Clarence Pair's estate, challenge the Superior Court's dismissal of their malpractice claims against the professionals who prepared and filed the estate's tax returns. In addition, appellants contest the dismissal of their breach of fiduciary duty claim against a former co-personal representative. Appellants also complain about the trial court's order awarding costs to appellees after dismissing one count of the original complaint at appellants' request. We affirm the trial court's award of costs, but reverse the judgments of dismissal and remand with instructions.

## I. The Factual Background

Dr. Clarence Pair died on April 1, 2001, leaving an estate worth approximately

$6,000,000.00. Appellants Quentin and Lauren Pair (the "Pairs") are beneficiaries under Dr. Pair's will.[1] Dr. Pair's will and codicils nominated, and the Probate Division of the Superior Court appointed, the Pairs and Thomas Queen to act as personal representatives of the estate.[2] Mr. Queen also acted as the estate's attorney with respect to preparing and filing tax returns.

The relationship between the Pairs and Mr. Queen broke down after Mr. Queen informed appellants that the District of Columbia and the IRS had assessed penalties and interest charges against the estate totaling more than a million dollars. The Pairs allege that they learned the estate's tax returns had been improperly prepared and had been filed almost a year and a half late. The Pairs then terminated Mr. Queen's employment as the estate's attorney and hired new counsel and accountants to correct the errors. Shortly thereafter, at appellants' request, Mr. Queen resigned as co-personal representative.

## II. The Procedural Background

On April 1, 2004, appellants, representing the estate (as its remaining personal representatives) and in their individual capacities (as beneficiaries), filed a three-count complaint against appellees for their failure to properly prepare and file the estate's tax returns. Count II sought damages for attorney malpractice by Mr. Queen, his law firm (Thomas H. Queen and Associates), and Rudolph Smith, an attorney who appellants claim assisted Mr. Queen in preparing the estate's tax returns. Count II also alleged accountant malpractice by Gerald Tolliver, who appellants claim assisted Mr. Queen in preparing the tax returns. Count III sought damages for Mr. Queen's alleged breach of fiduciary duty while serving as a personal representative of the estate.

After a hearing on October 26, 2007, the trial court dismissed Count II of the complaint. Relying on *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), the court reasoned that, because the representative of a decedent's estate, as a taxpayer, has a non-delegable duty to the IRS to timely file the estate's tax returns, each of the personal representatives in this case was liable for the tax penalties. Then it "f[ou]nd, as a matter of law that the personal representatives ... [were] jointly and severally liable for the taxes, and the interest, and the penalties that are imposed on the estate." According to the trial court, "representatives who are also negligent don't have standing to ... bring a lawsuit against somebody who [they] joined in with in terms of creating the negligence." The court "f[ou]nd that ... contributory negligence in this case [was] a complete bar." For these same reasons, the trial court later dismissed Count III.

In dismissing Count II, the trial court also explained, "In addition to the fact that [ ] the duties are non[-]delegable, I find that there was no privity between Tolliver and Smith to the personal representatives." As a result, the court granted the summary judgment motions filed by Mr. Smith and Mr. Tolliver.

After the trial court dismissed Counts II and III, appellants requested that it dismiss Count I of their complaint with prejudice.[3] On November 26, 2008, the trial court did so, pursuant to Super. Ct. Civ. R.

---

**1.** Quentin Pair is Dr. Pair's only child and Lauren Pair is Dr. Pair's granddaughter.

**2.** Mr. Queen had been Dr. Pair's attorney for estate planning purposes.

**3.** Count I sought damages for attorney malpractice by Mr. Queen for negligently drafting Dr. Pair's will and codicils.

41(a)(2). The court also ruled that "as the prevailing party in this suit, under Rule 54(d) and 54–I," Mr. Queen was entitled to recover certain fees and costs. This fee award was, however, "conditional on the filing of an affidavit [from the expert witness]." Mr. Queen failed to submit such an affidavit and only submitted a general "Bill of Costs." Consequently, on March 27, 2009, the trial court determined that "no fees [were] due [ ] under the November 26 Order" and ordered appellants to pay Mr. Queen only "$945.17, comprised of $483.17 in filing fees and $462.00 in copying costs."

### III.  Analysis

#### A.  *United States v. Boyle*

Appellants argue, and we agree, that the trial court erred, as a matter of law, in applying *United States v. Boyle* to bar the Pairs' claims for malpractice and breach of fiduciary duty. The question at issue in *Boyle* was "whether a taxpayer's reliance on an attorney to prepare and file a tax return constitutes 'reasonable cause' under § 6651(a)(1) of the Internal Revenue Code, so as to defeat a statutory penalty incurred because of a late filing." *Boyle,* 469 U.S. at 242, 105 S.Ct. 687. *Boyle* concerned the duties an estate and its representative owed to the IRS. By contrast, the Pairs' claims of malpractice concern the duties a professional owes to a client.

Mr. Queen's dual status as a personal representative and as attorney for the estate has, understandably, led to some confusion in analyzing the complaint. The Pairs are not seeking to excuse "[t]he failure to make a timely filing of a tax return

... by [their] reliance on an agent." *Boyle,* 469 U.S. at 252, 105 S.Ct. 687 (holding that the executor's reliance on the estate attorney to file the return did not constitute "reasonable cause" for the failure to file a timely return). Instead, they are seeking "compensatory and consequential damages" through a malpractice claim. Importantly, nothing in *Boyle* suggests that a taxpayer's non-delegable duty to the IRS relieves a professional from liability for negligent failure to perform the duties for which an estate has employed him.[4]

#### B.  The Finding of Contributory Negligence

■ We also agree with the Pairs' assertion that the trial court erred in concluding that "contributory negligence in this case is a complete bar" to the Pairs' recovery from Mr. Queen. It is important to remember that the Pairs are not only personal representatives but also beneficiaries of the estate.

■ Personal representatives owe a fiduciary duty to the estate and its beneficiaries. *In re Estate of Green,* 912 A.2d 1198, 1209 (D.C.2006). For that reason, a personal representative is generally "personally liable to the estate for any penalties, interest, or additional tax which may accrue *as a result of [his] error.*" *In re Estate of Elkins,* 692 A.2d 910, 912 (D.C. 1995) (emphasis added). That is, a personal representative "whose violation of a tax law provision has resulted in the assessment and imposition of a penalty ... is, *in the absence of some showing of proper excuse* [,] ... personally liable to the estate." *Jones v. Hagans,* 634 A.2d 1219, 1225 (D.C.1993) (emphasis added) (quoting

4. In fact, the Supreme Court cautioned that "[t]o say that it was 'reasonable' for the executor to assume that the attorney would comply with the statute may resolve the matter *as between them,* but not with respect to the executor's obligations under the statute." *Boyle,* 469 U.S. at 250, 105 S.Ct. 687 (emphasis added). The trial court mentioned this "dicta" during the October 26, 2007, hearing but did not find it relevant.

J.R. Kemper, Annotation, *Liability of Executor, Administrator, Trustee, or His Counsel, for Interest, Penalty, or Extra Taxes, Assessed Against Estate Because of Tax Law Violations,* 47 A.L.R.3d 507, 510 (1973)).

When considering whether penalties resulted from a personal representative's error, this court has specifically "agree[d] with the distinction"

> between the non-delegation of the personal representative's responsibilities to ascertain when an estate tax return is due and to ensure that it is timely filed, and the delegation that occurs when the personal representative 'reasonably relies on expert advice concerning substantive questions of tax law, such as whether liability exists in the first instance.'

*Hagans,* 634 A.2d at 1226 (quoting *Estate of Smith,* 767 S.W.2d 29, 35–36 (Mo.1989) (en banc)). *Estate of Smith* recognized that when the latter situation occurs, although the estate, as opposed to the personal representative, had to pay the penalties, "[t]he estate [was] not without a remedy for the damages it ha[d] sustained.... [The] personal representative[ ] can bring a malpractice action on behalf of the estate against [the estate accountant]." 767 S.W.2d at 36 (reversing order directing personal representative to pay penalties for failure to file proper and timely tax returns).

Moreover, it is not clear that an estate is without recourse even when penalties derive solely from late filings of tax returns. At base, "[*Boyle* ] involved whether a penalty for late filing was owed; it did not address the question who would be responsible for the penalty imposed, the estate or the executor." *Estate of Smith,* 767 S.W.2d at 35.[5] Nor did it suggest that a personal representative, even one at fault, would be precluded from seeking contribution from another personal representative (or from a lawyer or accountant) who was also at fault. Such legal issues cannot be meaningfully addressed until the record is more fully developed.

To be sure, as personal representatives who owed fiduciary duties to the estate, the Pairs and Mr. Queen were required to file certain tax forms. *See* D.C.Code § 20–702 (2001); 26 U.S.C. § 6075(a) (2009); *Elkins,* 692 A.2d at 912 ("The law generally imposes on a fiduciary both the power and the duty to file tax returns and to pay any taxes owed on behalf of the estate...."). No one contests that the estate suffered substantial penalties as a result of both improper preparation and late filing of the estate tax returns. However, the trial court did not determine whether "the failure to file timely returns was [ ] due to a lack of diligence or dereliction of duty on the part of [the Pairs] with regard to ascertaining and meeting filing deadlines, [or] rather due to [their reasonable] reliance on [professionals'] erroneous advice and assistance regarding substantive issues." *Estate of Smith,* 767 S.W.2d at 36. So the trial court erred by relying generally on *Boyle* to conclude that the Pairs were liable for the tax penalties and that their malpractice claims were barred by the doctrine of contributory negligence. *See id.* at 35 (trial court erred by "relying on [*Boyle* to find] that the failure to file timely estate tax returns was not excused

---

**5.** In a case where "[t]here was no evidence before the trial judge to show whether the penalties accrued due to an error by the personal representatives or if the representatives had reasonably relied on an accountant's judgment[,]" this court "remand[ed] ... to the trial court to determine whether the [tax] penalties (and any interest charges) resulted from a violation of the personal representatives' duty...." *Hagans,* 634 A.2d at 1225, 1226.

by the personal representative's reliance on the accountant to whom he had delegated the responsibility").[6] On this record, we cannot say, as a matter of law, that the Pairs were guilty of negligence *per se.*

■ Moreover, when an estate has multiple representatives, "[a]s a general rule, co-personal representatives are jointly and severally liable [only] if they act together or one approves or acquiesces in the improper conduct of the other." *In re Estate of Chrisman,* 746 S.W.2d 131, 134 (Mo. App. E.D.1988); *Matter of Estate of Bartlett,* 680 P.2d 369, 379 (Okla.1984) (co-representatives of estate are jointly and severally liable if they act together or one approves or acquiesces in improper conduct of the other); *Walker v. Walker's Ex'rs,* 88 Ky. 615, 11 S.W. 718, 721 (1889) ("[O]ne representative is not bound for the acts of the other, unless he has such facts before him as would convince one of ordinary prudence that the assets in the hands of his co-representative are unsafe or being wasted.").[7] We cannot tell from the parties' briefs or the current record whether, or how, the Pairs and Mr. Queen allocated the various duties of a personal representative.

### C. The Claims Against Mr. Smith and Mr. Tolliver

Appellants also contend that the trial court improperly granted summary judgment to Mr. Smith and Mr. Tolliver. We agree.

■ We review a trial court's order granting summary judgment *de novo,* "view[ing] the evidence in the light most favorable to the non-moving party." *Jane W. v. President & Dirs. of Georgetown College,* 863 A.2d 821, 826 (D.C.2004). "We must affirm the judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Molla v. Sanders,* 981 A.2d 1197, 1199 (D.C.2009) (quoting Super. Ct. Civ. R. 56(c)).

■ The trial court granted the summary judgment motions because (1) under *Boyle,* a personal representative's "duties are non-delegable" and (2) "[Mr. Smith and Mr. Tolliver] are agents of Mr. Queen. So he would be responsible for their acts.... [T]here's no privity of a relationship [sic] between them [and the personal representatives]." We have already concluded that the court erred, as a matter of law, by relying on *Boyle* to bar the malpractice claims. Moreover, further factual inquiry is required to clarify the roles of Mr. Smith and Mr. Tolliver. The exact nature of their relationship to Mr. Queen is not clear from the present record, and it is important to remember that Mr. Queen was wearing two hats. A key question (perhaps not susceptible of a clear answer) is whether he engaged Mr. Smith and Mr. Tolliver while acting as a personal representative of the estate or solely in his capacity as the estate's attorney.

---

**6.** We think the following observation is helpful: "[*Boyle*] involved whether a penalty for late filing was owed; it did not address the question who would be responsible for the penalty imposed, the estate or the executor." *Estate of Smith,* 767 S.W.2d at 35.

**7.** *See also In re Horowitz' Will,* 297 N.Y. 252, 78 N.E.2d 598, 601 (1948) ("Ordinarily one of several executors is responsible for his own acts, and not for those of his associates, but if he knows of, and consents to, his coexecutor's misapplication of the estate's funds, he becomes responsible for what the other has received."); *Wlodarek v. Wlodarek,* 167 Md. 556, 175 A. 455, 460 (1934) (executors have power to act separately and may incur separate liability).

The evidence points in different directions. For example, Mr. Queen said Mr. Tolliver "was engaged as an independent contractor to provide accounting and tax advice" and that Mr. Tolliver prepared and signed one of the federal tax returns. Mr. Smith and Mr. Tolliver, himself, claimed that Mr. Tolliver "was hired by the co-personal representative[s] to prepare the Estate's tax returns." In addition, both Mr. Smith and Mr. Tolliver said they did not work for Mr. Queen.

Yet, during a deposition, Mr. Tolliver stated that Mr. Queen "asked me to prepare the estate tax returns for the clients that he had.... As far as I know, I worked for Mr. Queen." The record does not contain a bill from Mr. Tolliver to the Pairs. Instead, Mr. Tolliver sent at least two bills to Mr. Queen and Mr. Smith, respectively, at Thomas H. Queen and Associates, charging $2,250.00 to prepare various tax returns for the estate. Mr. Tolliver "received [payment] from Mr. Queen" or Mr. Smith.[8] Mr. Queen admitted that the estate paid him approximately $10,000 to probate the estate, including fees for preparing and filing tax returns, and for Mr. Smith's work. When asked how he was paid for his services by Mr. Queen, Mr. Smith answered that he had no records of being paid and could not recall how he was paid; when pressed as to whether he paid "Mr. Smith for his services in connection with the Pair estate," Mr. Queen declined to answer on Fifth Amendment grounds.

We conclude that the present record does not support the trial court's decision

granting summary judgment on the ground that "there was no privity of contract between Mr. Smith and Mr. Tolliver with the personal representatives."

### D. The Award of Costs

Appellants object that the trial court should not have awarded "any [ ] costs whatsoever" based on the dismissal of Count I. They do not contend that Mr. Queen failed to show that the particular costs the court awarded were necessary or reasonable. Instead, appellants argue that the court either abused its discretion or erred as a matter of law because appellants voluntarily dismissed that count *with prejudice.* We disagree.[9]

The very case appellants cite to support their argument undermines it. *Schwarz v. Folloder,* 767 F.2d 125, 130–31 (5th Cir.1985), makes clear that "[b]ecause a dismissal with prejudice is tantamount to a judgment on the merits, the defendant [ ] is clearly the prevailing party and should ordinarily be entitled to costs." *Id.* at 130. Because appellants have cited no contrary authority, we find no abuse of discretion in the trial court's decision to allow court filing fees and copying costs to the prevailing party here, Mr. Queen. *See Panos v. Nefflen,* 205 A.2d 600, 601–02 (D.C.1964) (filing fees "ordinarily allowed as a matter of course"); *Robinson v. Howard Univ.,* 455 A.2d 1363, 1368 (D.C.1983) (same); *Talley,* 689 A.2d at 555 ("[T]he prevailing party may recover the cost of obtaining and copying records and other material necessary for case preparation and presentation.").

---

**8.** Mr. Tolliver also stated that at one point, Mr. Smith asked him to exchange a previous check for one written from "the client" so that "there was documentation that [he] had been paid by the client."

**9.** We review an "award of costs to the prevailing party under Super. Ct. Civ. R. 54(d)"

for abuse of discretion. *Talley v. Varma,* 689 A.2d 547, 555 (D.C.1997); *Kleiman v. Aetna Cas. & Sur. Co.,* 581 A.2d 1263, 1267 (D.C. 1990) (same). "[A]n award of costs committed by law to the trial court's discretion will rarely be disturbed." *Del Rosario v. Wang,* 804 A.2d 292, 294 (D.C.2002).

### E. The Trial Court's Order Regarding Expert Witness Testimony

Although the trial court originally granted appellants' motion to exclude testimony from Mr. Pacheco, one of appellees' expert witnesses, it later reconsidered and stated that it would allow Pacheco to testify. Importantly, the court noted that the issue "may be reconsidered at trial." The parties argue about the merits of this order without pausing to tell us why we may, or should, review it. Mr. Pacheco never testified at trial because no trial was conducted in this case. Thus, this interlocutory ruling did not affect the judgments before us and we will not review it.[10]

### IV. Conclusion

We affirm the trial court's judgment awarding copying and filing costs to appellees. We vacate the judgments dismissing Counts II and III and remand for further proceedings consistent with this opinion.[11]

*So ordered.*

---

**10.** Any aggrieved party will, of course, be "free, on appeal from [the trial court's] final judgment, to challenge any interlocutory ruling, not previously appealable, that 'led to entry of the final judgment and thus may have infected with error that judgment.'" *In re Estate of Brabson,* 757 A.2d 761, 767 n. 5 (D.C.2000) (quoting *Desmond v. Robertson,* 211 A.2d 775, 776 & n. 2 (D.C.1965)).

**11.** Our disposition does not affect Count I, which the trial court dismissed with prejudice at appellants' request.